CONRAD SCHNELL *et al.*

*v.*

THE CITY OF CHICAGO.

1. ADMINISTRATORS—*of the terms of court at which they may be appointed.* The Probate Courts, under the act in force in August, 1849, were always open for the purpose of granting letters of administration.

2. SAME—*of appointments at special terms—and herein, of questioning the action had at a special term.* But if it were otherwise, and letters of administration should be granted at a special term of the Probate Court, in a collateral proceeding it would be presumed the "extraordinary circumstances" existed as required in the 8th section of the chapter in the Rev. Statutes, entitled "Probate Court," to authorize a special term to be held, and that the court had before it the facts in that regard which were essential to its proper action.

3. SAME—*to whom administration may be granted, and when.* It seems that under the 55th section of the chapter of "Wills," where a party dying intestate, was a resident of this State, and left a widow, next of kin or creditors, the Probate Courts can not properly grant letters of administration to a stranger to the estate, as one who is neither the widow, next of kin nor a creditor, until after the lapse of seventy-five days from the death of the intestate.

4. The statute seems to require a delay of sixty days after the death of the intestate, within which the widow or next of kin may administer, before a creditor can apply for letters, and if no creditor applies within fifteen days after the sixty days, making seventy-five days from the death, then the Judge of Probate may appoint any person he thinks best qualified to manage the estate.

5. This power in the court, after the lapse of the seventy-five days, to appoint any one he thinks best qualified, includes the power to appoint the public administrator.

6. Same—*in what proceeding an improper appointment can be questioned.* Should letters of administration be granted to the public administrator before the expiration of the time within which others have the prior right to administer, and the record of the appointment shows that fact, but fails to show there was no widow, next of kin or creditor entitled to the administration, or that they had refused to administer, in a direct proceeding by appeal or writ of error from proceedings by the administrator so appointed, for the sale of lands of the estate, they would undoubtedly be held irregular and and be set aside.

7.    But in a collateral proceeding, involving the title to lands sold under such proceedings, the irregularity in the appointment of the administrator could not avail, but it would be presumed the Probate Judge granting the letters had the facts before him to justify his action.

8.    Former decisions. It was perhaps going too far in the case of the *Unknown heirs of Langworthy v. Baker*, 23 Ill. 488, to say that in consequence of such irregularities the entire proceedings by the administrator for the sale of lands were void, for it was sufficient to say in that case, it being a direct proceeding to reverse the action of the county court, that it was not in conformity with the statute.

9.    Administrator's *sale of land—mis-description of the premises.* The petition of an administrator for an order to sell land, described the premises correctly, as certain lots in section thirty-three. The lots were described in the abstract from the county court attached to the petition, and in the inventory from which the abstract is, by law, to be taken, as being in section *twenty*-three. And the order of sale directed the land in the petition to be sold—namely, lots, etc., in section *twenty*-three. The notice of the sale, and the deed made to the purchaser described the land correctly. *Held*, in a collateral proceeding involving the title, that the mis-description of the section, as mentioned, was a mere clerical error.

10.    Same—*application must be made at the time specified in the notice.* Where an administrator gives notice that he will, at a certain term of the court, apply for an order to sell lands of the estate to pay debts, the petition must be filed at the term designated in the notice. The presumption is, on such notice, and a failure to file the petition at the term specified, that the application is abandoned.

11.    If the petition should not be filed until a term subsequent to that appointed in the notice, all proceedings under it will be void.

12.    If the administrator files the petition and dockets the cause at the term named in the notice, there is no doubt it would be competent for the court to continue the cause to a subsequent term, and then grant an order to sell.

13. Estoppel *in equity.* Where lands of an estate have been sold by an administrator under an order of court which was void by reason of the petition not having been filed until a term subsequent to that appointed in the notice, the mere fact that the guardian of minor heirs of the intestate received a portion of the proceeds of the sale and applied it for the use of his wards, will not work an equitable estoppel to their asserting title to the land, when from their infancy and other circumstances surrounding them it was apparent they could have had no knowledge of the action either of their guardian or of the administrator.

14. Administrator's *sales of land—sales of separate parcels en masse.* At an administrator's sale of lots of ground, it appeared there was an arrangement between the administrator and a third party that two of the lots should be sold together, not separately, and the latter became the purchaser. Had the lots sold for an inadequate price the title of the purchaser would have been defeated on that ground. But as they sold for their full value and no one was injured by the arrangement, it was not regarded.

Appeal from the Superior Court of Chicago.

The case is fully stated in the opinion of the court.

Mr. A. W. Arrington and Mr. J. S. Page, for the appellants.

Messrs. Scammon, McCagg and Fuller, for the appellee.

Mr. Justice Breese delivered the opinion of the Court:

This was a bill in chancery brought in the Superior Court of Chicago, by the City of Chicago against the appellants, to restrain and perpetually enjoin them from prosecuting an action of ejectment they had commenced in that court to recover the possession of certain premises held by the city and claimed to belong to the city.

The facts of the case are in substance, as follows: One Jacob Milliman in his life-time having a pre-emption right to out lots forty-five, forty-six, forty-eight and forty-nine, in the Canal Trustee's sub-division of section thirty-three (33), in town forty north, in range fourteen east, purchased the same in September, 1848, for the sum of seven hundred and twenty-

five dollars, paying one-fourth of the purchase money at the time of the sale and executing his three notes to the trustees each for the sum of one hundred and eighty one dollars and twenty-five cents for the balance, payable in one, two and three years. Milliman died in possession of the premises on the eighth day of August, 1849, intestate, leaving five children, all infants. On the fourteenth of August, 1849, six days after his death, Cyrus Bentley, as public administrator of Cook county, applied for and obtained letters of administration on the estate.

On the eighth of June, 1850, the administrator published a notice in a newspaper of the city, that he would apply at the regular term of the County Court to be held on the first Monday in August, 1850, for an order for the sale of all the interest of the intestate in these out lots " in sub-division section 33, 40 north range 14," for the purpose of paying the debts of the deceased, " upon a petition and abstract to be then and there presented for such purpose, under the 125th section of the act in relation to wills, &c."

The abstract presented showed outstanding debts against the estate amounting to two hundred and twenty dollars and twelve cents.

In the inventory of the real estate the description of the land is as follows : " Out lots 45, 46, 48, 49, in Section 23, township 40, range 14 east. Title consists in certificate issued by Canal Trustees to Milliman, that he had purchased the same at $725 and paid one-fourth and given them notes for balance, payable in one, two and three years."

The petition is in the usual form—it states, however, that the debts against the estate amount to two hundred and fifty six dollars and sixty-eight and three-quarters cents. The decree of the court ordering a sale of the whole of this property, is in proper form and conforms to the petition, except that in the decree, the out lots are described as in section twenty-three (23) instead of thirty-three (33), their true location. The last clause of the decree is as follows: "And it is further ordered that the above proceedings which were had and ordered by the court

at the last September term, but which were omitted to be then entered, be now entered *nunc pro tunc* as and for said September term, to-wit : of the date of October 5th, one of the days of said term, and to have the same force and effect as if then entered."

Notice of the sale was duly published, wherein it is stated that the interest of the deceased in these out lots will be sold, " said interest consisting of a canal certificate, on which there remain to be paid, on the 6th day of September, 1851, one hundred and eighty-one dollars and twenty-five cents."

Lots 48 and 49 were sold together, and bid off by the City of Chicago, at two thousand five hundred dollars, all which has been paid. It appears that lot 45 contained about three acres of ground—lot 46 about one acre—lot 48 two and 37-100 acres, and lot 49 ten acres.

There is evidence going to show that the administrator was waited on by an agent of the city, who prevailed on him to offer these lots together, and not separately, giving an assurance that the city would make a liberal bid for them, if so offered. It is also shown that the lots sold for their full value at that time. The guardian of Milliman's heirs, on the 30th May, 1859, received a deed from the Canal Trustees, of these four lots, executed to the heirs, and it appears the administrator paid the balance due upon the lots, out of the proceeds of this sale to the city, and the notes Milliman had given for the deferred payments, were handed to the guardian by the administrator.

It is in proof the heirs were so young at the time of the sale to the city and for some years thereafter, as not to be presumed to have any knowledge of matters of this kind—that they were separated, living in different families, and their education neglected.

The city bought the lots for cemetery purposes, and fenced them in 1852. Catharine, the oldest, knew of the sale in 1854, and Caroline in 1860, and Henry about the same time. There is no evidence that David, the youngest, had any knowledge of the proceedings, or of matters growing out of

them. The proceeds of the sale paid by the city, were appropriated to taking up the notes due for the lots, and the remainder was paid over to the guardian of the children, who appropriated it to their use. The city executed a deed without any consideration, in January, 1853, for two burial lots, part of these premises, to the heirs, being the lots on which their father and mother were buried.

The city has divided this land into a large number of burial lots and sold them to different parties.

The bill prays that the appellants " release, convey and confirm" to appellees, out lots 48 and 49, and for general relief, and for an injunction to stay proceedings in the ejectment suit. All which the court decreed.

The case is brought here by writ of error, and it is assigned for error

1st. That the findings of the court are not warranted by the evidence.

2d. That the bill should have been dismissed.

· 3d. The decree should have been in favor of the defendants below, or of one or more of them.

On this assignment of errors, many points are made, the most important of which we will notice.

It is urged by appellants that all the proceedings in reference to the administration on this estate, and the sale of the premises, were void, because

1st. Bentley was never the legal administrator, he having been appointed at a special term of the County Court—that the statute requires the terms to be held at the regular time fixed by law and "at such other times as extraordinary circumstances may require," and the record does not show that any emergency had occurred authorizing it to call a special term.

2d. That Bentley was neither a relative nor creditor, and the court had no power to appoint him until sixty days after the death of the intestate.

3d. That the intestate was an inhabitant of this State, and the application for the appointment of the public administrator

was not made by the party interested therein, but by the public administrator himself; and it no where appears there was no relative or creditors within the state, to whom administration might have been committed, but the contrary does appear; and, therefore, the whole proceedings were void for want of jurisdiction.

In support of this position the case of the *Unknown heirs of Langworthy* v. *Baker, Adm'r.,* 23 Ill. 484, is referred to. That was a proceeding by writ of error to the County Court, and this court held that the facts not affirmatively appearing which gave the court power to act, the appointment of the administrator was a void act, and consequently the order of sale and the sale made by him of the land were also void.

It has been suggested that the court went too far in that case—farther than the facts of the case warranted. That as the County Court had complete jurisdiction of the subject matter, it should have been intended those facts existed, which properly called into action the power of the court.

If that decision is to be so modified, then these objections, being made in a collateral proceeding, can not avail, for the court in such a proceeding are bound to presume the County Court had before it the facts justifying the appointment of the public administrator, as the administrator on this estate. It, perhaps, was going too far in the case cited from 23d Ill., to say the entire proceedings were void, for it was sufficient to say in the case, it being a direct proceeding to reverse the action of the County Court, that the action of that court was not in conformity with the statute. This would have been sufficient to justify the court in the conclusion to which it arrived, on the merits of the whole case. Here, in this proceeding the courts must intend, an occasion had arisen or extraordinary circumstances required the appointment of this administrator. But we believe it has always been understood that the Probate Court, under the act in force when these letters were granted, was always open for such purpose, and no extraordinary circumstances need be shown. Great injury

might result if it were not so.  Such, we understand, was always the practice under that law.  The statute referred to under the second head of objection, that the court had no power to appoint an administrator until sixty days after the death of the intestate, is the fifty-fifth section.  That section provides, that the widow shall have preference in the administration, but if no widow or other relative of the intestate shall apply within sixty days from the death of such intestate, the court of probate may grant administration to any creditor who shall apply for the same; and in case no such application be made by any creditor or creditors within fifteen days next ensuing the lapse of the said term of sixty days, administration may be granted to any person the judge of probate may think will best manage the estate—but in cases where the intestate was a non-resident, or without a widow, next of kin or creditor in this State, but having property within the State, administration shall be granted to the public administrator and to no other person.  Scates' Comp. Sec. 55, page 1190.

Here the intestate was a resident, and the statute seems to require a delay of sixty days after the refusal of the widow or next of kin to administer before a creditor can apply for letters, and if no creditor applies within fifteen days after the sixty days, making seventy-five days from the death, then the judge of probate can appoint any person, and this term would include the public administrator, he might think best qualified to manage the estate.

Now if it was error to make this appointment before seventy-five days had elapsed, can it be taken advantage of in this collateral proceeding?

Does the record show facts necessary to give the Probate Court power to act in the case?  The application by Bentley for letters of administration, was made on the 14th of August, 1849, and the record of the appointment recites the fact that the intestate died six days prior thereto, to-wit: on the eighth day of August, 1849, and fails to show there was no widow, next of kin or creditor, entitled to the administration, or that

they had refused to administer. The question arises, must not this court, in this proceeding, presume the Probate Court was satisfied on those facts? May not the Probate Judge have received proof thereof before he acted? As there is no law requiring him to preserve such proof in the record, must we not presume such proof was received and on which the judge acted? He had cognizance of the subject—his jurisdiction over it was complete, and if he erred in carrying it out, such error can not be urged in this collateral proceeding to upset them all. There is not probably, in the records of all these probate justices, a case to be found wherein the record will show such proof was received before letters were granted to a person not entitled to them, except in certain contingencies. Those records will not show the happening of those contingencies, and the result would be, if this objection is sustained, that nearly all the sales by administrators so appointed throughout the State, would be rendered void, to the great loss and injury of thousands who have paid in good faith full value for the property so sold and purchased. On an appeal or writ of error from such proceedings this court would undoubtedly hold them irregular and set them aside.

It is contended further that the sale is void for the reason that the lots described in the abstract from the County Court, and attached to the petition, are described as, "out lots 45, 46, 48, 49, in Section 23," instead of Section 33, which is the land in controversy. That the inventory of the real estate of the intestate, from which this abstract is, by law, to be taken; also describes it as section 23, and so does the order of sale itself; hence, it follows, there was no order of sale for the land in controversy.

The petition describes the land correctly, as in section 33, and the order of sale directs that the land in the petition be sold, namely, lots 45, 46, 48 and 49, in section 23. The notice of the sale contained a true description of the location of the lots, and so does the deed from the administrator to the appellee.

If the intestate was shown to have possessed lands in section 23, or if it had been shown that section 23 had been subdivided into out lots, numbered as these are numbered, there might be some ground for the objection.    But nothing of the kind is shown, and this misdescription of the section in the inventory and order of sale, must be held to be a mere clerical error, not affecting the validity of the sale, since it is clear the proper lots prayed to be sold were sold, and were the lots intended to be sold.    The description is as particular in the petition as in the inventory and order of sale, and the lands described in the petition were the lands ordered to be sold.

It is further objected, that the notice of the intended application for leave to sell these lots, was published June 8, 1850, and that the petition would be presented for an order to sell, "at the regular term of the County Court to be held on the first Monday of August, 1850."

The records show no presentation of any petition at this term, nor any proceeding in relation thereto, until the sixth day of October, 1850, being the last day of the September term.    On this sixth of October, being of the September term, the petition was presented and filed, and the order of sale granted.    This order was not entered in fact, until the 26th of November, the day before the sale, when it purports to be entered *nunc pro tunc* as of October sixth.

In answer to this objection, it is said by appellee that the administrator did appear at the August term in accordance with his notice, and make the application for leave to sell the lots, and the matter was laid over to the next term.    That the administrator so swears, and that his testimony is not controverted.

This question is to be determined not by oral testimony but by the record.    But as to the oral proof by the administrator, he does not swear that he presented his petition, or filed it at or before the August term and for that term.    He merely says he appeared with his petition, and the matter was laid over until the next term, no one appearing to respond to the

petition. Having the petition in his pocket, and not present-
ing it and having it filed at that term, was not a compliance
with the statute. Who laid the matter over is not stated.
Not the court, certainly, for, no petition being before it, the
court had nothing to act upon. The fact that no parties ap-
peared to respond to it was unimportant, as in such cases there
is, very rarely, any appearance of the opposite party. But
the administrator himself proves that the petition was not filed
at the August term, for he says, at the next term he thinks it
was, he again appeared with his petition, and the same was
filed, and an order of the court was entered, granting the
application. Of course, if the petition was filed at the next
term, which was the September term, it could not have been
filed at the August term, unless withdrawn by leave of the
court, and of this there is no evidence. The record sustains
this testimony of the administrator, and showing, as it does, that
the petition was not filed until the September term, it never
came under the notice of the court until that term.

The question then is, was such presentation of the petition at
the September term, when notice had been given it would be
presented at the August term, a compliance with the statute,
and if not such compliance, does it not render the proceedings
void?

This question has already been determined by this court.
The case of *Turney et al.* v. *Turney, Adm'x*, 24 Ill, 625, is in
point.

In that case, notice was given by the Administratrix that she
would apply by petition to the Circuit Court of Jo Daviess
county, at the July term, 1847, for an order to sell the real
estate of the intestate. This petition was not filed until the
following September term, and this court held that the failure
to file the petition at the term specified in the notice and
petition, and to have the cause docketed at the July term,
abated the proceeding, and before any other steps could be
taken, the heirs and parties in interest should have been again

brought into court by another notice, as if none had been previously given.

We see no reason to depart from this ruling in this case. Had the administrator at the August term filed the petition and docketed the cause at that term, we have no doubt it would have been competent for the court to have continued the cause to a subsequent term, and then granted an order to sell. The presumption is on such notice, and a failure to file the petition at the term specified, that the application is abandoned. To charge the heirs or parties in interest, it is necessary the notice should be renewed in all cases where the petition is not filed in pursuance of the notice. See also, *Morford* v. *Morris*, decided at this term. *Parden* v. *Dwire*, 23 Ill., 672.

It is insisted, however, by appellees, that the appellants are estopped in equity from recovering the possession of this property, inasmuch as they have had the money which the administrator received from the city, and the same has been applied to their benefit by their guardian, and cite the case of *Penn and wife* v. *Heisey*, 19 Ill. 295, as controlling this case. In fact, appellees say the case of *Penn* v. *Heisey*, "runs on all fours," with this case.

Some of the facts in that case were similar to facts in this case, but the leading fact there, is wanting in this case. In that case it was proved that the plaintiff (and Penn was a lawyer) knew all the facts respecting the sale of the lot by the guardian of Mrs. Penn, and the purchase and conveyance of the other land out of the proceeds, and which they had received and enjoyed, and which, at the time of the trial, were of more value than the lot in controversy. Those plaintiffs knew the condition of the property, the various transfers of it, and of the improvements made upon it. The account of the guardian on his settlement, was closely examined and scrutinized by Penn, who made no complaint of its fairness, nor did he take any exceptions to it, and the land conveyed by the guardian to the heirs, purchased by part of the proceeds of the sale of this lot, had been sold by Penn and wife for a large sum

26—38TH ILL.

of money.  This lot also had passed through several parties, none of whom had any notice of any defect of title, and the only defect alleged was that the court had not formally confirmed the sale by the guardian.  In this case the proof is abundant, that these ignorant appellants, then in their nonage, did not, and could not, from their position, know any thing of the proceedings of the administrator on the estate of their father, nor did their guardian ever have any settlement of his trust with them, by which they could know the true state of the facts, nor with the court appointing, nor was there any circumstance, caused by any act of these appellants, which, in our judgment, ought to operate as an estoppel against their claim to recover the possession of these lots.  Nor did the appellants receive the money for which the lots sold, as a large part thereof was appropriated to pay for the title.

There is evidence, tending very strongly to show, these lots were sold together, by an arrangement made with the administrator, by Jones, the agent of the city.  Had the lots sold for an inadequate price, we should be inclined to reverse the judgment on that ground, but as they brought a full price, and no one was injured thereby, we make no point on that.

On the ground, then, that the petition had abated, by non-presentation at the August term, the order thereon, and all subsequent proceedings must be held to be void, for want of notice.  The decree therefore, is reversed.

*Decree reversed.*