# Wheeling.

## GEORGE SNIDER *et al. vs.* CHRISTIAN SNIDER *et al.*

### January Term, 1869.

1. A decree rendered in November, 1861, by the pretended court of appeals of Virginia, at Richmond, acting under the authority of the citizens of Virginia in insurrection and open war with the United States and the restored government of Virginia, is not obligatory upon parties to a cause pending in said court on the 17th of April, 1861.

2. A will provides for the sale of all the real estate of the testator, by the executor, and gives to the widow the interest of one third of the proceeds for life. Widow renounces the provision and claims dower, which is assigned her. The executor proceeds to sell the reversionary interest in the land of which the widow is endowed. It is held that the sale of the reversionary interest is not within the time, scope and spirit of the power of sale conferred by the will.

3. In such case the purchaser of the reversionary interest is not entitled to an allowance for improvements put upon the land after the service of the subpœna and bill filed to set aside the sale and cancel the deed from the executor to him. And the purchaser is liable for rents and profits, when the land is in his possession, after the death of the widow.

Abraham Snider died seized of certain real estate in Berkeley county. He disposed of his estate by will, providing that it should be sold by his executor, and his widow should have the interest arising from one-third of the proceeds of such sale for life; to seven legatees, his sons and daughters by a former wife, he gave sums amounting in the aggregate to 2,000 dollars; after the death of the widow the sum devised to her was to be equally divided among all his children. The widow renounced the provisions of the will and claimed dower, and a decree of the circuit court of Berkeley gave her 331 acres of land. Shortly thereafter the

administrator with the will annexed advertised the reversionary interest in the 331 acres for sale, and George Snider, a son by the second marriage, became the purchaser at the price of 55 cents per acre. Two of the legatees, Christian Snider and Daniel Snider, filed a bill at April rules, 1848, alleging the foregoing facts and asking that the sale by the executor to George Snider of the reversionary interest be set aside. The executor answered that he thought he had a right under the will to make the sale, and had done so and made a deed to George Snider therefor; that he had tendered to the legatees their share respectively arising therefrom, which in the aggregate amounted to 180 dollars and 39 cents, but they had refused to receive it.

This sale was made in 1846; the testator died in 1845.

George Snider answered, claiming the benefit of his purchase and denied fraud, alleged in the bill; he also claimed to have made large and valuable improvements since his purchase.

The cause was referred to a master, who reported the land to be worth from 3 to 4 dollars per acre without any incumbrance of the widow's dower, and worth 2 dollars with the incumbrance. He also reported the improvements made by George Snider to be worth to the reversion 500 dollars. The court decreed, in 1852, that George Snider be allowed for improvements made by him, that is for the then present increased value to the reversion.

In October, 1853, the court entered a further decree, cancelling the deed from Robert K. Robinson, the administrator with the will annexed, to George Snider, and the cause was again referred to a master commissioner to ascertain and report the value of improvements erected since the date of the purchase, who again reported the value to be 500 dollars. The widow died in the spring of 1854, and the cause was again referred. It appeared by the report of the master that all the buildings and improvements made by George Snider, before the institution of the suit, had been made to the mansion house and was valued at 75 dollars, and the residue had been made after the service of the sub-

pœna and the filing of the bill stating the object of the suit. It further appeared that the total present value of the land, not taking into consideration the value of the improvements, amounted to 1,158 dollars and 50 cents.     In May, 1856, the further decree was entered, ordering the administrator with the will annexed, Robert K. Robinson, to sell the 331 acres of land, unless the seven legatees in the will, whose legacies amounted to more than the land would bring at public or private sale, according to the report of the master, should elect to take the same in lieu of their legacies; and the cause was also referred to ascertain the rents and profits of the land since the death of the widow.     Under this reference the master reported the rents and profits to be valued at 200 dollars.

A final decree was had in October, 1857, confirming the land to the seven legatees, they having elected to take it under the provisions of the former decree, decreeing the sum of 200 dollars, the rents and profits, to the legatees, to be paid by George Snider, and giving the complainant costs. The administrator, Robinson, George Snider, and the residue of the legatees appealed.

*Stanton & Allison* for the appellants.

The case of *Brock* vs. *Philips,* 2 Wash., 68, was a case in which the executor was authorized to sell so much land as was necessary, and devising one-half of the residue to his wife for life, and the other half to his children. The executor sold one-half of the land and divided the balance between his widow and children.     The proceeds of the sale of the one-half proving insufficient to pay the debts, he sold the reversion of the half of the residue, which was assigned to the widow.     The court held that he should have sold the portion assigned to the children which was unincumbered.

In the case of *Jackson* vs. *Ligon,* 5 Leigh, 161, the testator after making provision for his wife during her life and widowhood, provided that after his wife's death or marriage his executor should sell his land.     The widow renounced the will, and dower was assigned her.     The exe

utor sold *during the life and widowhood* of the widow. Held, that the will did not authorize a sale until the death or marriage of the widow.

This establishes the proposition that the renunciation of the widow does not change the construction of the will or the powers of the executor. . 3 Leigh, 179, 182–3.

Where provision is made for a widow in a will, it will not bar her of dower, unless it is expressly stated to be in lieu of dower. *Adsit* vs. *Adsit*, 2 Johns., Chy Rep., 450; *Smith* vs. *Kinshire*, 4 Johns., Chy Rep., 9; *Higginbotham* vs. *Cornwall*, 8 Leigh, 83.

*Charles J. Faulkner* for the appellees.

The case of *Brock* vs. *Philips*, 2 Wash., 68, establishes that the purchaser of land sold by an executor or administrator under a special power is bound to look to and to understand the extent of that power; and that the principle *caveat emptor* strictly applies in such case. If in selling the reversion the executor exceeded his power in *Brock* vs. *Philips*, where there were debts to pay, the administrator certainly exceeded his power in this case where there were no creditors to be provided for and the interests of legatees were alone to be consulted.

Courts, seeing "the sacrifice inevitably attendant upon the sales of reversionary interests," consider that "it is not fair to presume, where such power is not given by the testator, that he could have designed it should be exercised by his executor." *Jackson* vs. *Ligon*, 3 Leigh, 189.

In this case, the testator has certainly not given any express power to sell a reversionary interest; it was no part of his design that such a power should be exercised by his executor; not only so, but his intention in regard to selling the *land* out and out and dividing the money, could not, after the widow's renunciation, be carried out by selling the *dry reversion* in what was assigned her for dower. S. C., 183. For, in this view, several objects were to be attained by means of the proceeds; part was to go to his wife, legacies were to be paid to seven children, and the balance was to be

204     COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,          Snider et al. vs. Snider et al.          1869.

divided among all his children.    And all of these objects
were frustrated by the widow's renunciation; she taking
another interest by the assignment of her dower; and this
chance in the subject of the power rendering that subject—
when it became a mere dry reversion—incapable in that
state of raising what was intended for the children.

Moreover, even if there was a power to sell, sale should
not have been made at so low a price and at the time it was,
when there were no debts requiring the sale and it was ob-
jected to by some of the legatees, and the objection was not
merely to a sale at the March court.    Raney deposes to a
conversation at that time with the administrator, in which
both "Christian and Daniel Snider objected to the sale of
dower until after the widow's death."    When there was
such objection, the proper course was to wait for the decree
of a court of equity.

On this ground, as well as on that stated in the opinion
of the circuit court, it was proper that the sale of this land
—ascertained by the commissioner's report to be worth 3 dol-
lars and 50 cents per acre or 1,158 dollars and 50 cents—
should not be allowed to stand.    It is no sufficient answer,
that some of the legatees may have preferred a sale.    If
they did, they might have had their own interest sold, but
not have had a sale embracing interests of others who ob-
jected, at least not without a decree.

Nor is this a case in which there has been any unreason-
able delay.    For the sale was on the 13th of April, 1846,
for one-third cash and the residue in two equal and annual
payments, and the suit was brought before the two years
expired.    In fact, the purchaser knew of the plaintiff's ob-
jection, was prepared to expect the bill, and in his answer
makes no objection on the ground of delay.

Under the decree of May 4, 1852, witnesses were ex-
amined and a report made.    The purchaser excepting to
that report, the cause was heard on the report and excep-
tions, and a decree made December 13, 1852.    Witnesses
were again examined, another report was made, and the re-
port was recommitted May 3d, 1853.    Other depositions

were taken, another report was made; and then was entered the decree of October 4th, 1853, whereby the sale was set aside and the cause recommitted with instructions.   Further depositions were taken, and the cause was heard at September term, 1855, upon a report filed December, 1854, and the exceptions thereto; and thereupon it was decreed, that the cause be recommitted to the commissioner with instructions to re-state and settle the matters theretofore referred to him.

The report of April 26, 1856, purports to be, and in fact was, under the decree made at September term, 1855.   It states that "the only building erected upon the land since the death of Abraham Snider, and before the institution of this suit, is an addition to the mansion house in which the widow lived."   Upon the testimony before him, the commissioner estimates it at 75 dollars cash to the widow, by whom it was done; and he concurs with the witnesses, that "this building does not impart any additional value to the inheritance." · He further finds that "all the other buildings were erected upon the land since the institution of this suit, and long after the subpœna was served in this case on George Snider and the bill filed stating the object of the suit."   Of course, he takes no account of them.

The cause was heard September 22, 1856, upon this report, to which *no exception was filed*, and the same was approved and confirmed. ˙ It being thus ascertained that the purchaser was entitled to nothing for improvements or labor on the land, and the widow having died the decree of September 22, 1856, referred the cause to a commissioner to take an account of the rents and profits of the land since her death.   And then was made the report of September 10, 1856, and *no exception being taken* either to this report or to that of April 26, 1856, both were confirmed and the decree of October 3, 1857, properly directed payment of what was by the last report charged for the rents and profits.

The testator having died in 1845, and the administration account being only since June 7, 1849, and beginning with the balance then due the estate, the inference is that

the proceeds of the other land sold by the administrator were before the 7th day of June, 1849, applied to pay debts, and not to satisfy the seven legacies, either whole or in part. The fact that there was no such satisfaction, and the further fact that the residuary legatees have no interest in the sale of the 331 acre tract, are both established by the report of April 26, 1856, which takes an account of the pecuniary legacies chargable on the real estate and states it so chargable for the seven legacies, making together 2,000 dollars, and states the value of the 331 acres to be 3 dollars and 50 cents per acre, or 1,158 dollars and 50 cents. To this report there being *no exception*, and the same being confirmed, it thus appeared that the amount of the seven legacies were beyond any price which the land would produce at public or private sale, and the court, by its decrees of September 22, 1856, and October 3, 1857, properly so declared and properly allowed them to take the land.

The decree of May, 1852, directed the commissioner "to ascertain and report what disposition has been made by the administrator of Abraham Snider, deceased, of the funds arising from the sale of said reversion." Under this decree the administrator made a report, showing what, upon the settlement of the administration account, appeared to be the balance remaining in the administrator's hands. Out of this balance there can be refunded to the appellant so much as he has paid on account of the purchase money of the land. But he has failed to show how much he has so paid. The amount paid by him neither appears in the commissioner's report nor in the evidence. It is probable that the footing on which the appellant stood with the administrator led him to think it was unimportant to prove what he had paid, or to obtain a decree therefor; and it is also probable, that without any such decree he can obtain re-payment from the administrator. There is certainly no ground for reversing the decree as to this matter. But we are quite willing that the affirmance should be without prejudice to a preceeding by the appellant against the administrator to recover back what may be shown to have been paid.

BROWN, President delivered the opinion of the court.

This was a pending appeal in the supreme court of appeals of Virginia, at Richmond, on the 17th day of April, 1861. Afterwards, pending the war, viz: on the 19th of November, 1861, a so-called decree was made in the case by certain learned gentlemen, who had been on the said 17th of April, 1861, and prior thereto, judges of the said court. This court will take judicial notice that the said gentlemen, who assumed to be a court, acted under the authority of those citizens of Virginia then in insurrection and open war against the government of the United States and the restored government of Virginia, and without and against the authority of the said government of Virginia; and by reason thereof and of the ordinance of the loyal people of Virginia in convention assembled, in June, 1861, were not, according to the principles laid down in the cases of *Seldenridge* vs. *Hawver*, 2 West Va., 274, and *Burkhart* vs. *Jennings*, 2 West Va., 242, either judicial officers, or a court of the State of Virginia, nor were their acts as such obligatory upon the parties to this cause. The court is of opinion, therefore, that the circuit court of Berkeley rightly overruled the motion made in that court after the formation of the State of West Virginia to enter the said pretended decree as the judgment of the court in the cause.

And this court is further of opinion that the power given by the will of the testator Abraham Snider, to his executor, to sell his real estate, was conceived in the expectation that his widow would accept and abide by the provisions made for her in said will, and with the purpose and intent that all his lands should be sold, free from incumbrance, and the proceeds of the sale disposed of as directed in his will; and that the widow having elected to renounce the provisions of the will, and the tract of 331 acres in the bill and proceedings mentioned, having been assigned to her as and for her dower in the real estate of the testator, the sale by the administrator, with the will annexed, of said tract of land subject to the incumbrance of the widow's life estate therein, was not within the time, scope, and spirit of the power of

sale conferred by the will, and, consequently, that the circuit court did not err in decreeing and ordering in its decree of the 4th of October, 1853, that the said sale be set aside, and that the deed from Robert K. Robinson to the appellant George Snider, conveying the reversion in said tract of land, be cancelled and declared void.

The court is further of opinion, that as it is shown by the proofs in the cause that the improvements put by the appellant George Snider, on said tract of land, have all been made since the service of the subpœna and the filing of the bill stating the object of the suit, the circuit court did not err in refusing to allow the appellant anything on account of said improvements.

The court is of further opinion, that the circuit court did not err in holding the appellant George Snider to account for the rents and profits of said tract of land for the period that has elapsed since the death of Catherine Snider, the widow of the testator.

The court is, however, further of opinion, that it does not appear by the record how much has been realized from the sale of the lands of the testator, other than the tract of 331 acres, nor how much has been received by the seven legatees mentioned in the will, severally, on account of their respective pecuniary legacies, and so it does not appear satisfactorily that the residuary devisees would not be prejudiced by allowing the said legatees to take said tract of land in lieu of their legacies, or of the balance that may be due thereon; and, consequently, that the circuit court erred in its order of the 3d of May, 1856, and in its final decree, in allowing the said legatees, without the consent of all the devisees interested in the residuum of the estate, to elect, and in confirming their election, to take said land in preference to and in lieu of their pecuniary legacies.

The court is further of opinion, that no sufficient reason is shown why the said court did not, in its final decree, make provision for the return to the appellant George Snider of the 180 dollars and 39 cents, the purchase money of the reversion of the tract of 331 acres, with its interest.

On account of the errors indicated, the court doth decree and order that so much of the several decrees and orders of the circuit court as are in conflict herewith be reversed and annulled, and that the appellant, who is an administrator, R. K. Robinson, out of the estate of his testator in his own hands to be administered, do pay unto the appellant George Snider his costs by him expended in the prosecution of his appeal aforesaid here; and it is ordered that the cause be remanded to the said circuit court for further proceeding in order to a final decree, in accordance with the principles herein declared and the rules of equity.