## RICHARDS *et al. v.* EDWARDY.

### FARLINGER *v.* EDWARDY; and *vice versa.*

1. Where several contiguous lots had been levied upon, and at a sheriff's sale in pursuance of the levy a number of the lots had been bid off for sums which aggregated an amount sufficient to discharge the fi. fa. under which they were sold, the sheriff could not lawfully proceed to sell other lots included in the levy; for when a sufficient amount of the property had been sold to produce a sum equal to or greater than the amount of the execution, that instrument, which was the sheriff's sole authority to sell, became functus officio; and if after this the sheriff continued the sale and actually sold other lots included in the levy, the sale of those lots bid off after the fi. fa. had been satisfied was void; and a sheriff's deed executed in pursuance of the sale conveyed no title to the purchaser.

(a) The case having been submitted both as to law and fact for decision by the judge, without the intervention of a jury, the judge was authorized to find, under the evidence, that the sale of lots described in the record as lots 5 to 14 inclusive was void on the ground that the levy was excessive and that the sale of all those lots was not necessary to satisfy the fi. fa. under which they were sold; the tract of land having already been subdivided into lots, and two of the lots, 13 and 14, not even being contiguous to the part of the land containing lots 5 to 12.

2. Where, under an agreement between the tenant in dower and the creditors of the deceased husband's estate, the life-estate and the reversion were sold together at sheriff's sale under an execution in favor of one of the creditors, in circumstances that rendered the sale of the reversion void, the reversioners were not estopped from bringing a suit for the

recovery of the land, after the death of the life-tenant, by the fact that the administrator of the estate of the deceased husband of the life-tenant, the ancestor of the reversioners, was present at the sale and did not object thereto.

(a) Nor are the reversioners estopped by the fact that one half of the proceeds of the void sale (the other half having been paid to the dowress under an agreement between herself and the creditors of her husband) was paid into court for the purpose of satisfying the claims of creditors.

(b) Under the facts in the case neither the plaintiff nor any one representing her interest has been guilty of such laches as to bar her right of recovery.

3. Nor, under the facts disclosed in the record, was the administrator, the defendant in fi. fa., a necessary party to the present suit brought to recover the property in controversy.

4. Where one enters upon land in good faith, believing that he has title thereto, but before placing improvements thereon suit is brought against him by one who actually has title to the property, and the holder is by the suit afforded a complete knowledge of the defects in his own title and of the character of the title asserted in the suit, and subsequently to the commencement of the suit he erects, improvements upon the land, it can not be held that he has "bona fide placed improvements thereon," so as to entitle him to the benefits of the provisions of § 5587 of the Civil Code.

SEPTEMBER 24, 1912.  REHEARING DENIED OCTOBER 2, 1912.

Complaint for land. Before Judge Ellis. Fulton superior court. July 22, 1911.

Marie Edwardy, by her next friend, brought two suits, one against J. B. Richards and others, constituting the board of deacons of Jackson Hill Baptist Church, and the other against A. W. Farlinger, to recover an undivided interest in certain pieces of real estate held by the respective defendants, that of the church being situated at the northeast corner of the junction of Jackson Street and East Avenue, and the Farlinger property fronting 50 feet on the north side of East Avenue near Boulevard, in the City of Atlanta. The plaintiff claimed, that these lands were the property of her grandfather, E. M. Edwardy, at the time of his death in 1867, and when he died intestate her father, W. M. Edwardy, inherited an undivided interest therein; that this portion of her grandfather's estate was set apart as the dower of her grandmother, Mrs. E. M. Edwardy; that before her grandmother died the property, by certain conveyances hereinafter referred to, passed out of the possession of the Edwardy family; and W. M. Edwardy having died in 1891, the plaintiff seeks to recover her interest in said lands, she being yet a minor. The two cases were tried together,

and were submitted to the decision of the judge, without a jury, on an agreed statement of facts, the material portions of which, in addition to establishing the foregoing contentions of the plaintiff, were as follows: When all of the lands composing the estate of E. M. Edwardy had been disposed of by his administrator, R. J. Massey, except the dower lands of Mrs. E. M. Edwardy, there were still unpaid debts against the estate, which was "heavily in debt, and in fact afterwards proved to be insolvent." One of the creditors, Lowenthal, obtained a judgment in 1870, for a sum aggregating less than $300 for principal and interest. Prior to this the administrator had confessed judgment for $18.55. In 1873 another judgment was entered against the administrator for several hundred dollars. The lands set apart for dower were unimproved; and an agreement was entered into between Mrs. Edwardy and the creditors of her deceased husband, the terms of which were, in substance, that the dower lands should be resurveyed by Wallace & Fowler, auctioneers; that one of the judgment creditors should place his execution in the hands of the sheriff, with instruction that he levy upon and sell the lands in question on the first Tuesday in April, 1872; that, after paying the expenses of this survey and sale, one half of the net proceeds of the sale be turned over to Mrs. E. M. Edwardy as belonging absolutely to her, the other half to be "paid over by the sheriff into court, to be distributed amongst all of the creditors of the said E. M. Edwardy who shall have established their validity pro rata according to the law in such cases made and provided, and according to the legal priority in each case;" and that Mrs. Edwardy should unite with the sheriff in giving title to the purchasers at the sale. The administrator knew of this agreement, and did not object to it. In pursuance of the agreement Lowenthal's fi. fa. was levied upon the lands above referred to, before the same were resurveyed by Wallace & Fowler, but after advertisement the property was offered for sale in accordance with the Wallace & Fowler survey, which showed the same divided into lots numbered serially 1 to 14, and all of said lots were sold by the sheriff on the first Tuesday in April, 1872, in the following order: lots 1, 2, 3, and 4, under separate bids, followed by the sale of lots 5 to 14, inclusive, sold under one bid to Wallace and Alexander. At this sale the prices bid for lots 1, 2, 3, and 4 aggregated more than $500, and for lots 5 to 14 the

bidders paid $848. The bidders for lots 1, 3, and 4 did not comply with their bids, and the sheriff readvertised and resold these lots in May, 1872. Mrs. Edwardy united with the sheriff in the execution of the deeds made in pursuance of these sales, which deeds recited the conveyance of "all the right, title, interest, and claim of the said Mary E. Edwardy in law, equity, or otherwise, whatever, of, in, or to" the same. In the year 1884 the purchasers of lots 5 to 14, Wallace and Alexander, secured an order of the superior court of Fulton county, so reforming and correcting their deed as to make it recite that the land therein described was levied on as part of the estate of E. M. Edwardy, and that the deed conveyed to the purchasers, their heirs and assigns, "all the right, title, interest, and demand of the said E. M. Edwardy, and his administrator, Robt. J. Massey, in and to the property in said deed described, without prejudice to the rights of movants to also have a conveyance from the sheriff now in office to said Jos. A. Alexander and John R. Wallace, and inuring to their vendees." The record in the other case does not show whether a similar order was ever taken, correcting and reforming the deed conveying lots 3 and 4. At the sheriff's sale in May, 1872, W. L. Hubbard and E. Y. Clarke were the purchasers of lots 3 and 4, and the defendants, Richards et al., hold under deeds from Hubbard and Clarke. Farlinger holds under the subvendees of Wallace and Alexander, his property being a portion of the property sold as lots 5 to 14 at the sheriff's sale in April, 1872. The Lowenthal fi. fa. has been lost. Farlinger has expended about $25,000 for improvements on his lot since the filing of this suit against him.

The judge found in favor of the plaintiff a twelfth undivided interest in the lands in each case, but against her as to recovery of any interest in improvements placed thereon. The defendants excepted; and the plaintiff excepted by cross-bill to the ruling that she is not entitled to a twelfth interest in the value of the improvements placed upon the land by Farlinger since the institution of her suit.

*Candler, Thomson & Hirsch,* for plaintiffs in error.

*T. W. Rucker* and *R. O. Lovett,* contra.

Beck, J. (After stating the foregoing facts.) These cases have been considered and decided together, inasmuch as the facts relating to the main question in each case are the same.

1.   The question of primary importance is as to whether the sales of the property in controversy by the sheriff, in April and May, 1872, were void or not.    Independently of the question whether the description of the property levied upon by virtue of the execution under which the sale took place was sufficient, under the admitted facts and the law applicable thereto, we are clearly of the opinion that the sale of lots 3 and 4, as designated in a survey known as the Wallace & Fowler survey, was void.    This is the property involved in the controversy in the case of Richards et al. *v.* Edwardy.    As appears from the statement of facts, when lots 3 and 4 were sold to W. L. Hubbard and E. Y. Clarke respectively, the fi. fa. of Lowenthal *v.* Massey, administrator, had been paid off and satisfied.    It was functus officio.    At the sheriff's sale in April, 1872, under this fi. fa., the sheriff had sold lots 5 to 14 inclusive, for the sum of $848, which was largely in excess of the amount due upon the Lowenthal fi. fa. for principal, interest and costs.    The sheriff's sole authority for selling any of the land involved in this controversy was the fi. fa. in favor of Lowenthal against Massey, administrator.    Whether other fi. fas. had been placed in his hands for collection or not does not appear in the record, and does not matter; for the only fi. fa. which had been levied was the one named above.    Except under and by virtue of this fi. fa., the levy thereof, and the advertisement in pursuance of the levy, the sheriff was without authority to offer any of this land for sale; and immediately upon a sale of a sufficiency of the property to satisfy the principal, interest, and costs of that fi. fa., the fi. fa. itself ceased to have vital force and the sheriff's authority to seize or sell under and by virtue of that fi. fa. was completely extinguished.    If the sums of $155 paid for lot No. 2, and $848 paid for lots Nos. 5 to 14 inclusive, which were paid to the sheriff, had not been applied to the fi. fa. under which the sale took place, but had been applied to the payment of other claims of superior dignity, this should have been shown; and in the absence of proof tending to show that they had been otherwise applied than to the extinguishment of the fi. fa. under which the sale took place, the presumption is that these sums were applied to the Lowenthal fi. fa. and that it was no longer of force.    "Where an execution is levied upon the property of the defendant, and at a sale had in pursuance of the levy the property brings a sum equal to or greater

than the amount due upon the execution, such sale satisfies the judgment, and the process is thenceforth functus officio, whether marked satisfied or not." *Jinks* v. *American Mortgage Co.,* 102 *Ga.* 694 (28 S. E. 609). "The innocent purchaser is bound only to see that the officer has competent authority to sell, and that he is apparently proceeding to sell under the prescribed forms." Code, § 6059. "It imposes no onerous duty on purchasers, to inspect the writ of fieri facias to see that it is in due and proper form, and with all legal requisites, as to entries and returns." *Hamilton* v. *Moreland,* 15 *Ga.* 343. In the case of *Carithers* v. *Venable,* 52 *Ga.* 389, it appears that Delila M. Venable brought ejectment against R. T. Carithers. The plaintiff relied for title on a decree of the superior court in an action of divorce, decreeing to her and her minor children a certain house and lot. Title in John Venable, the husband of the plaintiff, was admitted by the defendant; but he set up, as showing title in himself, that one Thompson obtained a judgment against John Venable in the county court of Jackson county for the principal sum of $383, and that under a fi. fa. issued upon said judgment, Hunter, sheriff of the county, levied on the house and lot and sold said property to the highest bidder, and said Thompson purchased the same, and a deed was made accordingly. The judgment was subsequent to a decree of divorce, but based upon a debt of a date anterior to the decree in the divorce case. Thompson conveyed the property to his wife, Mary Thompson, and she, through her agent, four years later conveyed to defendant. The fi. fa. appeared on its face to be a general execution, but it was shown by proof to have been a fi. fa. based on a judgment obtained in a suit commenced by attachment, and that there had been no service or notice to the defendant in the attachment proceeding, so as to give the judgment efficacy as a general judgment in personam. It was held in that case, that the purchaser, Carithers, the defendant in the ejectment suit, was not protected, and the absence of authority to enforce the execution as one based upon a general judgment, though the fi. fa. was apparently general, was more than a mere irregularity; that if there was no notice to the defendant in the attachment, the judgment was void and the sale under the execution issued on the judgment was void, and that the purchaser took nothing. In the case at bar the fi. fa., under and by virtue of

which the sale took place at which Clarke and Hubbard, who are the predecessors in title of the defendants, Richards et al., bought the property in controversy, had upon it an entry showing levy, not only upon lots 3 and 4, but also upon lot 2 and lots 5 to 14 inclusive, which were sold at the sheriff's sale in April, 1872, and presumably an entry showing the sale of those lots and the price at which they were sold. If Clarke and Hubbard, the purchasers of lots 3 and 4, had looked at the fi. fa., they would have known that it had been satisfied and the sheriff no longer had any authority to sell the lots which they were purchasing, and they derived no more title through a sale by him of these lots than if he had personally sold the lots to them without reference to the office of sheriff. Hubbard and Clarke, having obtained no title by virtue of the sale, could transmit none.

Now, coming to the consideration of the property which the plaintiff seeks to recover in the suit against Farlinger, it is apparent that Farlinger relies upon a title infected with a weakness that is fatal to it and renders it void. The sheriff's deed to Alexander and Wallace, through whom Farlinger derives title, was void and ineffectual to convey title, on the ground that the levy was excessive, which, as a fact, the judge, to whom the entire case was submitted without the intervention of a jury, was authorized by the evidence to find, and that the sheriff did not offer to sell by lots, although the tract of land had already been subdivided into lots, but sold the tract in mass. It is apparent that the sale of all of these lots was not necessary to satisfy the fi. fa., and two of the lots, 13 and 14, were not even contiguous to the tract of land containing lots 5 to 12, but were on the opposite side of the street designated as Rolling Mill Street. In the case of *Forbes* v. *Hall*, 102 *Ga.* 47 (28 S. E. 915, 66 Am. St. R. 152), where the plaintiff, Mrs. Forbes, filed an equitable petition praying an injunction against Hall, the purchaser at a sheriff's sale, and against the sheriff, to restrain them from turning her out of possession of certain lots that had been sold at sheriff's sale, and to set aside the sale on the ground that the levy was excessive and the sale thereunder void, it appears that two city lots, with three dwelling-houses thereon, were sold in bulk by the sheriff, and that the value of the lots was greatly in excess of the amount of the execution under which the lots were sold. In the course of the decision it

was said: "The rule seems to be, that where land is levied upon, more than sufficient to satisfy the execution, if it can be subdivided it is the duty of the sheriff or levying officer to do so and to sell or offer to sell the land in parcels. Rorer, in his work on Judicial Sales, § 730, says: 'When the land is divided into several parcels, though one and the same tract, the several tracts can not be sold together as in a body, but must be sold separately, with suitable identity of the several lots. If sold in the aggregate, the court, on motion, will set the sale aside. "Sales in mass, of real estate held in parcels, are not to be countenanced or tolerated." Upon the other hand, the rule seems to be that if the land can not be subdivided so as to be sold in parcels, then the levy is not excessive. Rorer on Judicial Sales, § 714. The facts here show that the land was capable of subdivision, and the levy and sale of the land en masse was void. *Brinson* v. *Lassiter,* 81 *Ga.* 43 [6 S. E. 468], and cases cited. It is claimed, however, by counsel for defendant in error, that Hall, the purchaser, should not be deprived of his bid, as he had examined the judgment, fi. fa., levy, etc., and the proceedings of the sheriff were apparently regular, and that Mrs. Forbes's remedy was against the sheriff for illegal levy. We do not agree with counsel in this contention. Hall was the attorney for the plaintiff in fi. fa. If he did not have the levy made, he saw from the entry of the sheriff the amount of property levied upon under this small execution. 'He knew or ought to have known in the first instance that the levy was grossly excessive. Being present at the sale, he knew that the sheriff did not offer to sell the property by lot or by parcels. He knew, therefore, not only that the levy was void because it was excessive, but that the sale itself was void because all the property was sold in bulk. He could not shut his eyes to these facts and rely upon the regularity of the proceedings of the sheriff. *Wallace* v. *Trustees,* 52 *Ga.* 168." In the case of *Roser* v. *Ga. Loan & Trust Co.,* 118 *Ga.* 181 (44 S. E. 994), it was said: "They [officers making levies upon property] are allowed a liberal and generous margin; they can take what is amply sufficient; but when they go beyond that, and make a levy that is excessive, and sell in bulk, the purchaser gets no title as against the owner or his privies in estate." In the present case the principles stated in the quotations which we have just made should be applied, because, even if the levy on its face

was not apparently so excessive as to render it void as a levy, the property had already been subdivided into lots by a survey which had been made under an agreement to which creditors of the defendant in fi. fa. were parties, and that division into lots of the tract of land sold was sufficient and no further division would have been necessary, and the sheriff conducting the sale under the fi. fa. could, without further subdivision, have sold off the lots one after another. But he did not do this; he sold all of the lots in mass, although two of the lots were, as we have pointed out above, separated by a street from the tract of land containing the larger number of the lots.

From what we have said above, Wallace and Alexander obtained no title at the sheriff's sale and could transmit none to the grantees in the deeds of conveyance of this property which they subsequently executed.

2. The plaintiff in this case is not estopped from recovering in this action because of the fact that Massey, the administrator of E. M. Edwardy, and against whom as administrator the execution issued under which the property was sold, was present at the sheriff's sale, made no objection to the manner of offering the property for sale, and stood by and saw the property sold without giving any notice or making any objection whatever. In the case of *Sellers* v. *Cheney,* 70 *Ga.* 793, it was said: "The estoppel is not good under the facts. It is based on the idea that the former administratrix stood by and saw the sale under the void fi. fa., and thereby the administrator de bonis non is estopped from attacking its invalidity. Even if an administrator sells illegally as an individual, he is not estopped as administrator; certainly then he will not be, if the preceding administratrix sees the sheriff sell illegally and says nothing. 57 *Ga.* 425; section 2966 of Code, and 59 *Ga.* 171, are not applicable." See also *Worthy* v. *Johnson,* 10 *Ga.* 358 (54 Am. D. 393).

Nor do we think that the plaintiff is estopped by reason of the fact that the proceeds of the void sale, after paying to Mrs. E. M. Edwardy, the dowress, one half thereof, were paid into court for the purpose of satisfying the claims of creditors of E. M. Edwardy. It is true, as recited in the statement of facts, that E. M. Edwardy's estate was "heavily in debt, and in fact afterwards proved to be insolvent." There was a legal method by which the

reversionary interest, after the extinction of the dower, might have been sold and the proceeds thereof applied to the debts of E. M. Edwardy; and we can not here judicially determine that if that legal method had been pursued, the property might have brought enough to discharge the debts of the estate and have left a balance for the remaindermen after the life-estate of the dowress. We do not and can not know but that the manner in which this property was brought to sale had a depressing effect upon bids; although it is cogently urged that the agreement which we have referred to above, between Mrs. E. M. Edwardy and the creditors of the estate, was calculated to cause the property to sell to the best advantage. Nor can we determine that when Mrs. Edwardy was permitted to take one half of the proceeds of the sale of this property, creditors were not releasing a larger part of the value than Mrs. Edwardy was actually entitled to, and surrendering a part of the value which should have been applied to debts, and, if more than sufficient to discharge the debts, held for the remaindermen. See, in this connection, Valle v. Fleming, 19 Mo. 454 (61 Am. D. 566), and Schnell v. City of Chicago, 38 Ill. 382 (87 Am. D. 304, and cases cited in the annotations).

Counsel for plaintiffs in error stress their contention that even if the sales of the property involved in these two suits were void, the purchasers, and especially their successors in title, obtained, if not a legal title, an equitable title, which should not now be disturbed. In addition to the grounds of estoppel advanced, and which have been considered above, it is urged that as these defendants and their predecessors in title have an equitable title to the property in dispute, the plaintiff, after the long lapse of time, is estopped by her failure more promptly to institute proceedings to set aside the sales alleged to be void; that she has been guilty of such laches in this respect as will effectually bar her right of recovery. Among the authorities cited by counsel to support this position, and the decision most nearly in point, is that of the Woodstock Iron Co. v. Fullenwider, 87 Ala. 584 (6 So. 197, 13 Am. St. R. 73). There it appears that the widow of Hudson owned a life-estate in the lands of her deceased husband, based on her allotted right of dower, and that she purchased the reversionary estate at a sale of the lands made by the administrator of Hudson for the payment of decedent's debts, on March 20, 1866, more

than 20 years before the commencement of the action by the heirs to recover the lands sold. The widow received a deed from the administrator, paid the purchase-money to him, and he used the money in the payment of the debts of the estate. The defendants claimed title through the widow, who did not die until June 25, 1879, or less than 10 years before the suit was brought. The possession of the defendants and those under whom they claimed had been continuous, exclusive, open, and under claim of ownership since the date of the administrator's sale, or for more than 20 years. In that case the Alabama court held: "The widow's possession of lands allotted to her as dower is not adverse to the heirs, and if she purchases the reversionary interest, at a sale made by the administrator, they can not assail her title, at law, during her life, even though the sale was void; and if the purchase-money was paid, and was applied by the administrator to the payment of debts, they would be estopped from denying the validity of the sale, without offering to do equity by refunding the purchase-money; and, having the equitable right to set aside the sale as a cloud on their title, on offering to do equity, if they allow the widow and those claiming under her to remain in undisturbed possession for more than twenty years, though less than ten years after her death has elapsed, the presumption will be indulged against them that she acquired the legal title by voluntary conveyance from them, or by compulsory proceedings in equity." We can not accept the doctrine announced in this case. It seems to be open to the criti-- cism made by Mr. Freeman in his annotations (13 Am. St. R. 78), which is in the following language: `"The precise ground upon which the court proceeded in the principal case is not easy to comprehend. The action was ejectment. The plaintiffs were conceded to hold the legal title. The possession of the defendants and those under whom they claimed commenced when the plaintiffs were re- versioners not entitled to the possession; the plaintiffs could not have maintained any action to recover possession until the death of their mother, the tenant for life, terminated her estate, and for the first time vested them with a right of possession; they brought their action within the time allowed by law after their cause of action accrued; and yet were defeated by what appears to have been substantially the statute of limitations. The defendants held a cloud upon the plaintiffs' title, which might have been removed by a court

of equity in an action on the complaint of the plaintiffs. A cloud upon the title is that which appears to be, but in law and in fact is not, title. The only harm which elsewhere results from such a cloud is, that the party whose title it clouds may find his title unmarketable, and at some distant time may have difficulty in producing the evidence requisite to rebut it, or to show its true nature. But if he chooses to suffer these inconveniences, we never before heard that his real title became worthless, and his adversaries' apparent title became real. Yet in Alabama, as appears from the principal case, the failure to remove a cloud upon a title may raise the presumption that it has ceased to be a cloud, and has become fortified by the true title. The court did not, however, take the position that, in ordinary circumstances, the statute of limitations could run against a reversioner who brought his action to recover possession within the period specified by statute after he became entitled to such possession. That position would have been unquestionably untenable. Orthwein v. Thomas, 127 Ill. 554, 11 Am. St. Rep. 159 [21 N. E. 430, 4 L. R. A. 434]; Lamar v. Pearre, 82 Ga. 354, 14 Am. St. Rep. 168 [9 S. E. 1043]."

The case of the Woodstock Iron Co. v. Fullenwider was followed by the Supreme Court of Alabama in Lowery v. Davis and one other decision rendered by that court. But the doctrine was criticised and doubted in the later case of Robinson v. Pierce, 118 Ala. 273 (24 So. 984, 45 L. R. A. 66, 72 Am. St. R. 160), and Mr. Justice Head, who rendered the opinion for the court, referred to the doctrine announced in the Woodstock Iron Company case as "much criticised and doubtful, if not plainly erroneous." And besides, it will be borne in mind that in this case the title attacked was void and not merely voidable, and the action was at law to recover possession of land.

From the agreed statement of facts in the present case it appears that the dowress died in the month of January, 1887. Until that time the heirs of E. M. Edwardy had no right to possession of the lands which had been allotted to their mother as a dower; and after these lands had been illegally conveyed to another party, who held them adversely to the heirs after the death of the dowress, such of the heirs as attained their majority would have had seven years in which to bring suit to recover their interest in the lands, before prescriptive title would ripen in the adverse holders. One of the

heirs, W. M. Edwardy, who was the father of the plaintiff, died in July, 1891, more than two years before the expiration of the period within which it was competent for him to bring suit for the recovery of the property here involved. His child, Marie Edwardy, was an infant at the time of his death, and had not attained her majority at the time these suits were brought. Clearly there is no legal bar to the maintenance of the present actions; and failure on the part of her father or of the administrator to act will not operate as an estoppel to prevent her from maintaining this proceeding to establish her legal rights.

3. There is no merit in the contention that suit should have been brought by the administrator. While he has never been formally discharged from the administration, it has been something like forty years, so far as this record shows, since he discharged any of the functions of an administrator; and it was fifteen years from the time when the administrator last performed any of the duties of his office to the date of the death of the widow of E. M. Edwardy. Presumably all of the debts of the estate, if any were left unpaid, have been long since barred by the statute of limitations. No doubt the administrator acted conscientiously when he stood by and saw the reversionary interest in the dower lands sold, and that he considered the estate finally administered; for, so far as we can gather from the record, he then laid aside the character of administrator and has not since assumed it.

4. But one other question remains to be decided. It is raised by the cross-bill of exceptions in the case of Farlinger *v.* Edwardy, assigning error on that portion of the judgment of the court allowing Farlinger to set off improvements, under the provisions of the act of 1897, codified in § 5587 of the Civil Code. This section declares: "In all cases where an action has been brought for the recovery of land, the defendant who has bona fide possession of such land under adverse claim of title may set off the value of all permanent improvements bona fide placed thereon by himself or other bona fide claimants under whom he claims; and in case the legal title to the land is found to be in the plaintiff, if the value of such improvements at the time of the trial exceeds the mesne profits, the jury may render a verdict in favor of the plaintiff for the land and in favor of the defendant for the amount of the excess of the value of the improvements over the mesne profits."

Under the agreed statement of facts showing that the improvements were placed by Farlinger upon the property sought to be recovered in the suit against him after the commencement of the suit, we do not think that there is any basis for the holding that the improvements which it is shown he had placed upon the land had been "bona fide placed thereon." In order to entitle the defendant in an ejectment suit, claiming to be a bona fide holder, to the provisions in his favor contained in the code section just quoted, he must show that he is not only a bona fide holder, but that the improvements upon the property have been "bona fide placed thereon." When Farlinger made the improvements which he is shown to have erected on this land, he had full notice of the defects in his title and complete notice of the rights of this plaintiff. He chose to ignore the rights of the latter, and he can not now be heard to say that his building was "bona fide placed" on the property of the plaintiff.

It follows from what we have said above, that the judgment of the court below is *affirmed* in the case of Richards et al. *v.* Edwardy and on the main bill of exceptions in the case of Farlinger *v.* Edwardy, and *reversed* on the cross-bill of exceptions in the latter case, with direction that the court below so modify its judgment in the last-named case as to conform to the ruling made in the last division of this opinion.      *All the Justices concur.*