### 28815. ZUGAR *v.* TENNESSEE, ALABAMA AND GEORGIA RAILWAY COMPANY.

DECIDED JULY 16, 1941. REHEARING DENIED JULY 31, 1941.

*Maddox & Griffin,* for plaintiff.
*Shaw & Shaw, Rosser & Rosser,* for defendant.

GARDNER, J. An historical, detailed discussion and decision of the facts and the law applicable thereto, how they arose, what the issues as between the parties then were, and now are as between the parties now in the case, how solved and determined so far, will be found in *Zugar* v. *Scarbrough,* 186 *Ga.* 310 (197 S. E. 854). After that suit was filed, and before the Supreme Court handed down its decision in favor of the plaintiff in error, reversing the trial court, the defendants in that suit, during the pendency of the case, converted some of the timber on the lands in question into crossties and sold them to the railway company, the defendant in this case. The effect of the Supreme Court's decision, supra, was to hold that Zugar, plaintiff in error there, and plaintiff here, was the true owner of the land in question and the timber converted. It is conceded by both parties that the only question presented for decision

in the instant case is whether, all facts considered, the conversion of the timber during the pendency of the suit, *Zugar* v. *Scarbrough,* supra, was wilful under the provisions of Code, § 105-2013, to wit: "Where plaintiff recovers for timber cut and carried away, the measure of damage is: (1) Where defendant is a wilful trespasser, the full value of the property at the time and place of demand or suit, without deduction for his labor or expense. (2) Where defendant is an unintentional or innocent trespasser, or innocent purchaser from such trespasser, the value at the time of conversion, less the value he or his vendor added to the property. (3) Where defendant is a purchaser without notice from a wilful trespasser, the value at the time of such purchase." The jury returned a verdict for the value of the timber at the time of the conversion, not including the cost of labor and expense added to the property in manufacturing the timber into crossties. This precise question has not before been presented to the appellate courts of this State so far as we have been able to determine, but has been decided in other jurisdictions. Pittsburgh Gas Co. *v.* Pentress Gas Co., 84 W. Va. 449 (100 S. E. 296, 7 A. L. R. 901). We quote from this case as we think the principles and facts there treated apply by analogy to the question of good faith involved in the instant case. "The first question," said the court, "which naturally presents itself is, what was the status of the defendants in relation to these lands at the time they drilled the wells thereon? That they were trespassers there is no doubt, but as will be hereafter seen a wilful trespasser is upon a different footing from one who can be said to be acting in good faith. The defendants contend that they were not wilful trespassers because they honestly believed that their title was superior to that of the plaintiffs. They were cognizant of every fact affecting their rights or interests in the lands, as well as the rights and interests of the plaintiffs, and their contention of good faith rests upon the sole ground that they honestly misjudged the law. They believed that under the law the existing facts, of which they were fully informed, gave them the superior right. The plaintiffs did not acquiesce in this view, but on the contrary vigorously contested it and contended from the very beginning that they alone had right to drill for oil and gas on these lands. Can the fact that one acts under a misconception of the law characterize his acts as innocent? The presumption is that every man knows the law, and

when he is fully informed as to the facts and makes a wrong application of the law thereto, ordinarily he will be bound by his acts to the same extent as if he had no misconception in regard to the law which controls. He is presumed to be as fully informed as to the law controlling under a given state of facts at one time as at another, and if he acts upon his own interpretation of the law he does so at his peril. In this case, as before observed, the defendants were fully informed as to the facts, and committed the acts which resulted in the extraction of the oil with this full knowledge, and with the further knowledge that their interpretation of the law was vigorously contested by the plaintiffs. It may be said that the defendants had such confidence in their judgment as to be willing to take the risk of an unfavorable decision. Entire good faith, it occurs to us, would have dictated to them that the proper course would be to wait until the controversy had been finally determined before expending large sums of money in drilling upon the land. This doctrine is fully discussed in the case of Chesapeake & Ohio Ry. Co. v. Deepwater Ry. Co., 57 W. Va. 641-695 (50 S. E. 890). In that case the Chesapeake & Ohio Ry. Co., entered upon the lands under an order of the circuit court and spent large sums of money in constructing a tunnel. It was afterwards determined that the Deepwater Railway Co. had the better right to the right of way in dispute, and notwithstanding the tunnel constructed by the Chesapeake & Ohio Ry. Co. was beneficial to the Deepwater Ry. Co. in its operations, this court denied any right to compensation for the money expended and the improvements made. It was there held that the Chesapeake & Ohio Ry. Co. could not be a bona fide occupant of the land, although it had entered thereon under an order of the court, believing its title to be good, because it had notice of all of the facts, being ignorant only of matter of law. The same doctrine was announced in Snider v. Snider, 3 W. Va. 200. And in Dawson v. Grow, 29 W. Va. 333 (1 S. E. 564), it was held that to entitle an evicted claimant to compensation for improvements put upon lands, he must have acted bona fide, and that one having knowledge of all the facts in regard to the title to the land, or means of knowledge, is not such bona fide claimant. In that case it was held that the recordation of the deed gave notice of the adverse claim, and that the one making improvements was charged with knowledge of such deed from the fact of its recordation alone.

And in Hall *v*. Hall, 30 W. Va. 779 (5 S. E. 260), it was likewise held that one evicted from land, claiming for improvements placed thereon, will not be entitled thereto unless he was a bona fide occupant, and that to be such bona fide occupant it must appear that he not only believed he had good title, and made the improvements in good faith under that belief, but it must be further shown that he at the time had reasonable grounds to believe his title good. If the title under which he claimed appeared upon its face to be defective upon a proper application of legal principles thereto, he could not be held to be acting in good faith. This doctrine is announced in other cases decided by this court, and is well sustained both by reason and authority. Why should one be treated as acting in good faith when dealing with property as his own when he knows all of the facts which constitute his claim as well as the claim of his adversary, which facts when properly construed give him no title to the lands? Such a holding would make every man a judge of the law in his own case, instead of being bound by the law as interpreted by those charged with that duty. We must, therefore, conclude that the defendants, when they drilled the wells on these lands, were wilful trespassers, just as much as though there had been no question but that the plaintiffs had the superior right. They could not decide the disputed question in their own favor, and then proceed with the hope that their acts would be characterized by this court as in good faith, even though their judgment upon the law of the case should not be approved."

The Court of Civil Appeals of Texas, in Liles *v*. Thompson, held, as edited in 85 S. W. 2d, 784, that "Lessees of mineral interest drilling oil well after notice of adverse claim and of suit to recover land held not 'innocent trespassers' entitled to reimbursement for cost of well at expense of adverse claimant." We quote from page 787: "In the present case the lessees drilled with notice of the adverse claim of Thompson and over his strenuous objection. He vainly endeavored to prevent the granting of a permit by the Railroad Commission for the drilling of the well. It is true he did not prevail in the suit upon the title which he originally asserted. In this respect there is a difference between this case and the case above cited. But it seems to us a serious impeachment of the good faith of the lessees when they persisted in developing the land for oil over the vigorous protest of an adverse claimant who was then

suing; of which adverse claim and suit such lessees had full notice. It would seem in such a case the lessees should be held to have expended their money at their own risk and can not be justly considered as innocent trespassers. As stated by Judge Leddy, a court of equity possessed ample authority to take such action as might be necessary and proper for their protection. The lessees did not see fit to resort to the courts for their protection, but elected to drill over the protest of the adverse claimant. Under the circumstances they are not to be regarded as innocent trespassers so as to entitle them to reimbursement for the cost of the well at the expense of the adverse claimant who vainly sought to prevent them from incurring such expense."

It will be observed that the courts above cited dealt with the expressions "wilful" activity, not "innocent" activity, "bad faith" activity, as being synonymous in the sense in which we are now discussing them. It seems our courts have dealt with them to the same effect. In *Tietjen* v. *Dobson*, 170 *Ga.* 123 (152 S. E. 222, 69 A. L. R. 1408), a charge that "wilful" meant "bad faith" was considered. The approved charge was as follows: "After determining the facts, if you find from the evidence of the case and settle where the line is, if you find that the defendants have cut timber belonging to the plaintiff, that it was on his land, according to what you find to be the proper line, you can then inquire and determine whether it was cut in good faith or bad faith. If it was cut in good faith, that is, if the cutting and removal of the timber by the defendants was done in good faith, honestly believing that it was their timber, and that they had the right to cut and remove it, and you should determine that it was not their timber, then the defendants would only be liable for the value per thousand feet of the timber as it stood when they cut it, and not the value of it manufactured into lumber. . . If, after taking the facts in this case, you should find under the facts of the case that these defendants cut and removed timber from the land of the plaintiff, and that it was not done in good faith, that they were not doing so honestly believing that they were cutting the timber that belonged to them, but it was done in bad faith, then the plaintiff would be entitled to recover the value of the timber after it was manufactured into lumber." One of the exceptions was that the court failed to define "bad faith."

So if we can with confidence and correctness move from the proposition that "wilful" and "bad faith" have the same meaning and effect in so far as "wilful" is used in the Code, § 105-2013, now under consideration, and we have no hesitancy in the conviction that we can do so, then we can with equally as much confidence and assurance pass on to a correct conclusion of the question before us, with our own Supreme Court to guide us. For the Supreme Court of this State in a number of cases involving a very similar question, if not indeed in effect an identical one, has spoken in no uncertain terms when it had under consideration the question of "bad faith" conduct under the provisions of the Code, § 33-107, with reference to erection of permanent improvements in good faith as follows: "In all actions for the recovery of land, the defendant who has bona fide possession of such land under adverse claim of title may set off the value of all permanent improvements bona fide placed thereon by himself or other bona fide claimants under whom he claims; and in case the legal title to the land is found to be in the plaintiff, if the value of such improvements at the time of the trial exceeds the mesne profits, the jury may render a verdict in favor of the plaintiff for the land and in favor of the defendant for the amount of the excess of the value of the improvements over the mesne profits." See *Farlinger* v. *Edwardy*, 138 *Ga.* 690 (4), 703 (78 S. E. 64), where the court said: "Under the agreed statement of facts showing that the improvements were placed by Farlinger upon the property sought to be recovered in the suit against him after the commencement of the suit, we do not think that there is any basis for the holding that the improvements which it is shown he had placed upon the land had been 'bona fide placed thereon.' In order to entitle the defendant in an ejectment suit, claiming to be a bona fide holder, to the provisions in his favor contained in the Code section just quoted he must show that he is not only a bona fide holder, but that the improvements upon the property have been 'bona fide placed thereon.' When Farlinger made the improvements which he is shown to have erected on this land, he had full notice of the defects in his title and complete notice of the rights of this plaintiff. He chose to ignore the rights of the latter, and he can not now be heard to say that his building was 'bona fide placed' on the property of the plaintiff." In *Walton* v. *Sikes*, 165 *Ga.* 422, 427 (141 S. E. 188),

the court said: "It has been held by this court that where a defendant enters upon land in good faith under an adverse claim of title, and, after suit is brought against him by one who has actual title to the property, erects improvements upon the land, it can not be held that he has 'bona fide placed improvements thereon,' so as to entitle him to set off the value of such improvements against the land. *Richards* v. *Edwardy,* 138 *Ga.* 690 (76 S. E. 64) ; *Hinesley* v. *Stewart,* 139 *Ga.* 7 (76 S. E. 385) ; *Hall* v. *Collier,* 146 *Ga.* 815 (92 S. E. 536). In the cases cited the improvements were erected pending litigation brought by the true owner to recover from the defendant the premises upon which the improvements were made, and after the defendants were fully informed of the nature and character of the titles and claims of the plaintiffs in these suits. So it is now well settled that the value of improvements placed upon land by the defendant pending an action brought by another to recover it from him can not be set off against the land itself under section 5587, supra [Code, § 33-107]."

Therefore we feel, in view of the authorities cited and from what has been said, that the admitted trespass against the true owner, Zugar, in cutting the trees while the suit was pending and before final determination made the trespass "wilful" and not in good faith, under the statute in question, and that the case should be reversed.      *Judgment reversed. MacIntyre, J., concurs.*

BROYLES, C. J., dissenting. On April 5, 1939, Max Zugar brought an action against the Tennessee, Alabama and Georgia Railway Company in Walker superior court to recover $5500 for the alleged conversion by defendant of 5000 cross-ties which, "during the years 1937 and 1938, . . defendant received . . and bought from Dan Scarbrough, Martin Scarbrough and Sam Cannon," and which "had been cut and taken from . . lands belonging to . . petitioner by said parties without his knowledge and consent and without any right in law . . so to do." The defendant denied that Scarbrough or his associates were wilful trespassers, and further pleaded that while, during the years 1937 and 1938, it paid Scarbrough $2437.55 for 4251 cross-ties placed on its railroad, it had no way of knowing where they were cut and purchased them in good faith, believing that the payee, Scarbrough, had title to and the right to sell them; that the land in question was sold in June, 1934, at public outcry to satisfy tax executions

against Max Zugar and his wife, Sarah, and was bought in by T. M. Quillian, to whom the sheriff of the county executed a deed; that Quillian conveyed the property by quitclaim deed to T. P. Scarbrough; that T. P. Scarbrough died, "and thereafter M. L. Scarbrough and his associates [who had acquired the title] entered upon said lands and cut and removed cross-ties therefrom;" that thereafter Max and Sarah Zugar "brought a proceeding in Walker superior court to set aside said tax sale . . as invalid, and said proceeding is now pending" in said court; that defendant is advised and believes that Scarbrough and his associates at the time they cut said timber were acting in good faith, believing that they had a valid title to said lands, and were not acting wilfully or in bad faith in cutting and removing said cross-ties; that the cost of sawing the timber into cross-ties and their delivery to defendant was 47 cents per tie, and the value of said ties was increased by said labor and delivery in the amount of 47 cents a tie, leaving the value of the timber at the time it was severed from the realty at 10¼ cents per cross-tie. A verdict in favor of the plaintiff for $610.41 principal and $127.35 interest was returned. The plaintiff's motion for a new trial was denied, and that judgment is assigned as error.

Counsel for the plaintiff make the following statement in their brief: "We think there is only one question for determination, and that is as to whether or not the evidence demanding a finding that, after April 6, 1937, the date the Scarbroughs were served in the proceeding of Zugar against them, they were intentional or wilful trespassers." The facts of the case as outlined in the pleadings were established by the evidence, and the only question before this court is whether under those facts there was any evidence authorizing the jury to find that the Scarbroughs and their associates were not wilful trespassers within the meaning of the Code, § 105-2013. That section is in part as follows: "Where plaintiff recovers for timber cut and carried away, the measure of damage is: 1. Where defendant is a wilful trespasser, the full value of the property at the time and place of demand or suit, without deduction for his labor or expense. 2. Where defendant is an unintentional or innocent trespasser . . the value at the time of conversion, less the value he or his vendor added to the property." The sole contention of the plaintiff in error is that the evidence demanded a

finding that the Scarbroughs were wilful trespassers, within the meaning of the above-quoted Code section, for the reason that after they had been served in a suit to enjoin them from cutting timber on the land in question (the suit being brought by Zugar and his wife and in which Zugar claimed title to the land under a warranty deed, subject to a security deed made by him to his wife), they continued to cut timber on the land. In that suit Zugar also asked the court to cancel the tax deed to the land made by the sheriff to Quillian and the deed made by Quillian to Scarbrough. As to that suit, the record shows the following facts: The court granted a temporary injunction against the defendants, but soon thereafter dissolved the injunction. Upon the trial of the case, the court directed a verdict for the defendants, and that judgment was reversed by the Supreme Court (*Zugar* v. *Scarbrough,* 186 *Ga.* 310), the court holding that the direction of a verdict in favor of the defendants was error since "the evidence would have authorized, if it did not demand," a verdict for the plaintiffs.

However, it is admitted by the defendant that the decision of the Supreme Court adjudicated that the title to the land in question was in the plaintiffs, and that the Scarbroughs were trespassers. But that decision did not adjudicate that they were "wilful trespassers." Did the evidence in the instant case demand a finding that they were such trespassers? In *Yahoola River Mining Co.* v. *Irby,* 40 *Ga.* 479, headnote 5 reads: "In an action of trespass for cutting timber on vacant land, when it is proved that the defendant, in good faith, believed it was his own land, the verdict, if for the plaintiff, ought to be only for the actual damages proven." In *Georgia Railroad &c. Co.* v. *Gardner,* 115 *Ga.* 954 (42 S. E. 250), the court ruled as follows: "One who enters upon and injures another's land is not, though a trespasser, liable for punitive damages, when the acts causing the injury were done in good faith under the honest belief that the land belonged to the former [the trespasser], and there was nothing in the manner of doing such acts to indicate an intention to wantonly disregard the rights of the true owner." In *Strickland* v. *Miller,* 12 *Ga. App.* 671 (78 S. E. 48), the court made the following ruling: "Where crude gum is wrongfully extracted from growing trees and manufactured into spirits of turpentine and rosin, the owner may maintain trover for the manufactured products. If the taking was under an hon-

·est claim of right, only the value of the crude gum can be recov-ered; but if the taking was not in good faith, the trespasser can not set off the expense of manufacture."

But the plaintiff in error contends that the above-cited cases are not controlling in the instant case because here the trespassers were notified by the suit brought against them by Zugar that he claimed title to the land, and therefore, as a matter of law, they were wilful trespassers. I can not agree with this contention. In the *Irby* case, supra, Dr. VanDyke, agent for the defendant, bought certain lands and cut $40 worth of timber thereon. The plaintiff claimed title to the lands and alleged that VanDyke's title was defective. A witness for the plaintiff testified that he had told Van-Dyke, before he bought the land, that he thought the title he was buying was bad. The judge charged the jury if VanDyke, although the agent of the defendant when the trespass was committed, had bona fide bought the land and believed it was his, the jury should not find more than the actual damages proved. The jury returned a verdict in favor of the plaintiff for $100, and the Supreme Court held: "The jury, in their damages are confined to the proof. It appears very plainly here that there was a bona fide belief in Dr. VanDyke that the land belonged to him, and no greater verdict ought to have been given than will cover the injury [$40] shown by the proof to have been given. Judgment reversed." In *Ingram* v. *Smith*, 62 *Ga. App.* 335 (7 S. E. 2d, 922), where both the plaintiff and the defendant claimed title to the land in question, head-note 4 reads as follows: "The evidence demanded a finding in favor of the plaintiff, and the measure of damages should have been governed according to whether the jury found that the defendant was a wilful trespasser or an unintentional or innocent trespasser."

In the instant case the evidence amply authorized a finding that the trespassers had a bona fide belief that they had a good and valid title to the land in question, and that they had reasonably good grounds for so believing. Their predecessor in title had bought it at a public sale, and the sheriff had deeded it to such predecessor, and the question as to whether their title was good was not decided until the decision of the Supreme Court, and in that decision the court specifically stated that they did not decide that the title was void, but that, because of certain irregularities in connection

with the public sale, Zugar's right to redeem the property had not expired, and therefore the title had not become vested in the Scarbroughs or their predecessor in title. There is no contention that the trespassers cut any timber subsequently to the decision of the Supreme Court. The court properly submitted to the jury the question as to whether the trespassers had a bona fide belief that they had a good title to the land; and the finding of the jury (as evidenced by the amount of their verdict) that they had such a belief was authorized by the evidence. The case of *Farlinger* v. *Edwardy*, 138 *Ga.* 690 (supra), cited by the plaintiff in error, was not a suit for trespass, but an ejectment action, and was not based on the Code section relating to trespass actions. The other Georgia cases so cited are distinguished by their facts from the instant case; and the cases cited from other States, apparently in conflict with the ruling in the Georgia cases hereinbefore cited, are not controlling on this court, and in my opinion should not be followed.

The special grounds of the motion for new trial, as stated in the brief of counsel for the plaintiff in error, are all based on the contention that the trespassers, after they had been served with the injunction proceeding brought against them by Zugar, could not, as a matter of law, be innocent trespassers. In my view these grounds are without merit, and the court did not err in denying a new trial.