# CHARLESTON

DAVIS *v.* CHESAPEAKE & OHIO RAILWAY CO.

Submitted September 6, 1906.    Decided January 26, 1907.

1. INSTRUCTION— *When Not Erroneous—Court—Duty Of.*

An erroneous instruction to a jury, given for the plaintiff, is not prejudicial to the defendant if, after all the evidence was adduced, it would have been the duty of the court upon proper motion to direct a verdict for the plaintiff. (p. 248.)

2. Unlawful Offense to Property— *When*.

   To constitute the offense of unlawfully but not feloniously injuring property under section 27, ch. 145, Code 1906, the extent of the injury must be such as to impair the utility or diminish the value of such property. (p. 251.)

3. Railroad Company—*Damages for Act of Conductor*.

   When a railroad company is liable for the act of its train conductor in unlawfully arresting and imprisoning a person on the train, and such act is malicious, wanton, willful or reckless, the company is liable for exemplary or punitive damages. (p. 254.)

Appeal from Circuit Court, Kanawha County.

Action of trespass on the case by R. L. Davis against the Chesapeake and Ohio Railway Company. Judgment for plaintiff, and the Railway Company appeals.

*Affirmed.*

Avis, Jordon & Hardy, for defendant in error.

Simms & Enslow, for plaintiff in error.

Cox, President:

The Chesapeake & Ohio Railway Company, a corporation, asks to reverse a judgment against it for $900.00 and costs, entered upon the verdict of a jury by the circuit court of Kanawha county, in an action of trespass on the case instituted by R. L. Davis. The plaintiff Davis claims, and offered evidence on the trial before the jury tending to prove, among other things, that on the 9th day of February, 1904, he became a passenger at Huntington, W. Va., on train number 6 of the defendant company, running east through Kanawha and Fayette counties; that he bought a ticket to Malden in Kanawha county; that afterwards he decided to continue his journey to Paint Creek Junction, in said last named county; that he was unacquainted with the location of Paint Creek Junction; that he did not hear the name of that station called, and did not get off of the train at that point; that, after passing that station, the conductor requested payment of additional fare from the plaintiff; that plaintiff said he had paid his fare and refused to pay additional fare, and requested the conductor to let him get off of the train; that the conductor then placed plaintiff under arrest, and in charge of the brakeman and pumpman, employees of the de-

fendant company; that at Handley, in Kanawha county, the plaintiff asked those (or one of them) in charge of him, the conductor not then being in the car, to let plaintiff get off of the train, saying, "If you will let me off I will walk back, I will pay you to Handley", that the plaintiff was not permitted to get off of the train at Handley; that he was then taken on the train to Montgomery in Fayette county, and turned over to the chief of police of that town, by the conductor or by his direction; that plaintiff was placed by the chief of police in the "lockup" in said town until the next day, when the same train again arrived at Montgomery; that plaintiff was then brought before the mayor of said town and tried, the conductor appearing against him, and fined $10.00 and sentenced to imprisonment for ten days; that plaintiff was then placed in said "lockup", and on the next day again brought before the mayor, discharged and his fine remitted. In some particulars the evidence is conflicting. The conductor testified that while the train was at Paint Creek Junction he said to plaintiff, "This is your station," and that plaintiff replied, "No it aint, I know the road, this aint Paint Creek." The conductor, when asked for the reason why he took plaintiff (and another with him) to Montgomery after leaving Paint Creek, said: "To get fare if they were going to ride; lots of people get on and pay to a station and then do not get off at that station." There are other features of the evidence which is unnecessary to detail.

There was a demurrer to the declaration, which was overruled. The declaration contains but one count. No point was made in argument in this Court on the demurrer, and the declaration seems to be entirely sufficient as a declaration for false imprisonment.

Two grounds are relied on by defendant for reversing the action of the trial court in refusing to set aside the verdict and award a new trial. They are (1) that the court misdirected the jury in giving instruction number 1 for plaintiff; (2) that the damages found by the jury are excessive.

Instruction number 1 for the plaintiff is as follows: "The court instructs the jury that if they believe from the evidence that the plaintiff, without just cause, was arrested after he be-

came a passenger on one of the defendant's trains, and during the time that he was on such train either by the conductor in charge of said train, or by another employee of the defendant by order of the said conductor, that the act of the conductor, or of said employee acting under the orders of said conductor, was the act of the defendant, the Cheapeake & Ohio Railway Company." Instructions of like import seem to be popular with plaintiffs in cases of this kind. This is the third case in which such an instruction has been in review before this Court. The objection made to this instruction is, that it uses the words "just cause" instead of the words "probable cause," and for that reason is misleading. In *Gillingham* v. *O. R. R. Co.*, 35 W, Va. 588, a similar instruction was approved, when considered with the other instructions given in that case. In *Claibourne* v. *C. & O. Ry. Co.*, 46 W. Va. 363, a like instruction was condemned as misleading for the use of the words "just cause" instead of "probably cause." It is contended that this instruction does not extend to the liability of the defendant to the plaintiff. This may be true, according to its strict letter, but its ultimate object must be to fix a liability on the defendant; otherwise, why was it offered by plaintiff in this action, in which he seeks to recover from the defendant? We are inclined to the opinion that the only purpose and ultimate object of the instruction is to fix a liability on the defendant. By using the words "just cause," it was calculated to mislead. In order for an act of a conductor, in making an arrest as conservator of the peace, to be justifiable, it is not essential that there be just cause in the sense of actual cause for the arrest. The arrest is justifiable if there exists such a state of facts as constitute in law probable cause; or as frequently expressed, reasonable, probable cause; or justifiable, probable cause.

Although instruction number one is erroneous, was it prejudicial to defendant, or does this case come under the authority of that class of cases in which an erroneous instruction is harmless? It is contended that there is no evidence in this case showing probable cause justifying the arrest, and that the evidence does fix a liability on the defendant for the act of the conductor in arresting and imprisoning the plaintiff. If this position is correct, and if it would have

been the duty of the court upon motion, after all the evidence was adduced, to direct a verdict for plaintiff upon the issue and an assessment of damages, then the instruction, although erroneous, was not prejudicial. *Ketterman* v. *R. R. Co.*, 48 W. Va. 606; *Tucker* v. *Ins. Co.*, 58 W. Va. 30; *Davis* v. *Living*, 50 W. Va. 431. This leads us to a consideration of the question of probable cause. According to the uncontroverted evidence the plaintiff, previous to the time of arrest, had been a passenger on defendant's train. He had failed to get off of the train at the station to which he had paid fare. He had continued on the train, and when requested to pay fare refused. In *Vinal* v. *Core*, 18 W. Va. 1, it was held that probable cause is a state of facts actually existing, known to the prosecutor personally or by information derived from others, which would lead a reasonable man of ordinary caution, acting conscientiously upon those facts to believe a person guilty of an offense justifying his arrest, and is a question of law for the court. The facts must be viewed from the standpoint of the prosecutor. *Brady* v. *Stiltner*, 40 W. Va. 289. The defendant contends that the question presented is this: "Had the conductor reasonable grounds to believe that the plaintiff was trying to beat his way without paying fare?" and some of the defendant's instructions were based on that theory. Viewing the evidence in the most favorable light for the defendant, and assuming that the plaintiff fraudulently continued on the train refusing to pay fare (which we do not decide), of what criminal offense was there probable cause to believe him guilty? If the plaintiff fraudulently remained on the train refusing to pay fare, he became a trespasser and might have been ejected from the train in a proper manner, no more force being used than was necessary for that purpose. *Grogan* v. *C. & O. Ry. Co.*, 39 W. Va. 415; Moore on Carriers 553, 747.

It does not follow that, because the plaintiff was a trespasser in the eye of the law relating to a civil action for damages against him, he was guilty of a criminal offense. Various offenses relating to railroads and railroad property are provided by statutes, such as trespassing upon any railroad car by jumping on or off thereof (section 31a, chapter 145, Code 1906) maliciously destroying, removing or injuring railroad property (section 26, same chapter); riotous and dis-

orderly conduct (section 31, same chapter).   Others might be mentioned.   It was not pointed out in argument, nor does it appear from our examination, that the facts in this case constitute probable cause to believe that plaintiff had committed an offense under any of the statutes relating specially to railroads or railroad property.   Section 27, chapter 145, Code 1906, provides that if any person unlawfully but not feloniously "take and carry away or destroy, injure or deface any property, real or personal, not his own, he shall be guilty of a misdemeanor and fined," etc.   The previous Virginia statutes on this subject, as well as the one under consideration, like the statutes of many of the other states, probably grew out of the common law offense of malicious mischief. 19 Am. & Eng. Enc. Law 639. See *Dye's Case.* 7 Grat. 662; *Henderson's Case,* 8 Grat. 708.   So much of our statute as relates to the taking and carrying away, destroying or defacing property does not apply to this case, under the evidence. It may, however, be argued that the plaintiff, by fraudulently remaining on the train and refusing to pay fare, was guilty of the offense of injuring property not his own, under the statute.   According to the great weight of authority, to constitute the offense at common law of malicious mischief for injuring property, the extent of the injury must be such as to impair utility or diminish value.   2 Whart. Crim. Law, section 1074; 2 Bish. Crim. Law, section 992; *State* v. *Watts,* 48 Ark. 56; 5 Park Crim. Rep. (N. Y.) 185; *State* v. *Robinson,* 3 D. & B. Law Rep. (N. C.) 130; *State* v. *Cole,* 90 Ind. 112; 19 Am. & Eng. Enc. Law 638; see also *Dye's Case* and *Henderson's Case, supra.*   In a civil action for the recovery of damages, some degree of injury will be implied (28 Am. & Eng. Enc. Law 555,) but such is not the case as to malicious mischief for injuring property at common law.   Our statute uses the word "injure."   By the use of this word, it would seem reasonable to suppose that the legislature intended the extent of the injury to be the same as required at common law.   We conclude that such was the intention of the legislature, and that it was not intended by the statute to provide a criminal offense for every act which would constitute a trespass in a civil action for damages. See *Dye's Case, supra.* Then, in order to come within the provision of the statute, the extent of the injury must be such as to impair the utility

or diminish the value of the property. No such injury is shown by any of the evidence. The mere remaining on the train, although fraudulent, without other injury, is insufficient. Under the evidence there was no existing state of facts amounting in law to probable cause, justifying the arrest of the plaintiff by the conductor or by his direction.

The *Gillingham Case, supra,* laid down the rule that a railroad company is liable for the unlawful arrest of a passenger by the conductor of its train or by his direction, acting in the line and within the scope of the conductor's employment, although the act was not previously authorized nor subsequentiy ratified by the company. See also *Claibourne* v. *R. R. Co., supra; Phila. & R. Railroad Co.* v. *Derby,* 14 How. (U. S.) 468; *Ramsden* v. *Boston & A. R. Co.,* 104 Mass. 117. In the case at bar, although the plaintiff may have been a trespasser, the action of the conductor in arresting him must be considered within the line and scope of the conductor's employment, as much so as if the plaintiff had been a passenger. It is as much the duty of the conductor in charge of a train to deal with a trespasser on the train as it is with a passenger, notwithstanding that the duty which the common carrier owes to a passenger is different from that which it owes to a trespasser. Under the views above expressed, instruction number 1 for plaintiff, although erroneous, was not prejudicial to the defendant, and the giving of it does not constitute reversible error.

We come to a consideration of the second ground of error relied on by defendant; namely, that the damages awarded by the jury are excessive. The plaintiff was unlawfully placed under arrest near Paint Creek Junction, was carried to Montgomery in another county, and unlawfully imprisoned for one day and for a part of another day. Plaintiff's evidence tended to show that he was not well, and that after his release he was unable to work for about six weeks. It was not shown that his arrest and imprisonment caused or aggravated his illness. It may be contended that the damages awarded are exemplary or punitive, and that the defendant is not liable therefor unless the act of the conductor was previously authorized or subsequently ratified by the defendant.

The rule as to exemplary damages announced in the case of *Mayer* v. *Frobe*, 40 W. Va. 246, by which we are now governed, is that " in action of tort where gross fraud, malice, oppression or wanton, willful or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive or vindictive damages; these terms being synonymous." Instruction number 2, given for plaintiff, is as follows: " The court further instructs the jury that if they find from the evidence the defendant, Chesapdake & Ohio Railway Company, guilty, they are, in estimating plaintiff's damages, at liberty to consider, the expense and loss of time, if any, incurred by the plaintiff R. L. Davis; also the bodily and mental pain and anguish, if any, resulting from defendant's (Chesapeake & Ohio Railway Company's) acts as proved, and for the outrage and indignity and humiliation put upon the plaintiff; to allow such damages as in the opinion of the jury will be a fair and just compensation for the injuries sustained, not exceeding the amount sued for." It has been said that an instruction like this authorizes exemplary damages as a *solatium*. Such an instruction was approved in the *Gillingham Case* and in the *Claibourne Case*. So much of an instruction as announced the principles contained in this instruction was approved by JUDGE SNYDER in *Ricket* v. *Railroad Co.*, 33 W. Va, 588. In the *Gillingham Case* the damages awarded were $1000.00. That case involved damages for an unlawful imprisonment lasting less than a day. Under the circumstances of that case this Court held that the plaintiff was entitled to recover exemplary or punitive damages for an unlawful arrest, by direction of a conductor in the line and scope of his employment, without evidence that the act of the conductor was previously authorized or subsequently ratified by the company. In the opinion in the *Claibourne Case, supra,* JUDGE DENT cites and to some extent reviews our former cases on this subject, and says: " In all cases where a corporation is liable for the willful, wanton, malicious or illegal conduct of its employees, it is subject to exemplary or punitive damages." Also it is held in that case that if the compensatory damages are sufficiently punitive it is improper to instruct the jury to allow an additional

sum as punitive damages.     Moore in his Work on Carriers, page 901, says:     "The rule more generally followed, however, both in cases where any distinction between the acts of the carrier and those of its servants is rejected as unjust, and those which do not refer to such a distinction, is that exemplary damages should be awarded against the carrier for the malicious act or gross neglect of its servants, or where the injury complained of was accompanied by unnecessary force and was inflicted by a servant of the carrier in the line of his duty, without reference to any express or implied participation in the tort by the carrier by authorizing it before or approving it after its commission. And it has been held that there is no class of cases where the rule can be more beneficially applied than to railroad corporations in their capacity of common carriers of passengers, and that it might as well not be applied to them at all as to limit its application to cases where the servant is directed or impliedly commanded by the corporation to maltreat and injure a passenger, or to cases where such an act is directly or impliedly ratified; for such cases will never occur."     See also Hutchinson's Carriers (3rd Ed.) section 1440, 1444.     The defendant being liable for the act of its conductor in unlawfully arresting and imprisoning the plaintiff, or in directing him to be arrested and imprisoned, it is liable for exemplary or punitive damages, if the act of the conductor was malicious, wanton, willful or reckless.     This case was tried by a jury. The conductor and the plaintiff were before the jury.     The jury heard their evidence, and saw their demeanor and all the incidents of the trial material upon the questions of maliciousness, wantonness, willfulness or recklessness.     The damages awarded were $900.00.     The circuit court refused to set aside the verdict.     In *Stevens* v. *Friedman*, 58 W. Va. 78, it was held that, in cases where exemplary damages may properly be awarded, the verdict of a jury will not be set aside on the ground alone that the damages awarded are excessive, unless the amount is so large as to evince passion, prejudice, partiality or corruption in the jury.     Under the evidence and circumstances appearing in this case, we can not hold that the damages awarded were so large as to evince passion, prejudice, partiality or corruption in the jury.

The judgment is affirmed.

*Affirmed.*