## CHARLESTON.

PITTSBURGH AND WEST VIRGINIA GAS CO. *et al.* v. PENTRESS GAS Co. *et al.*

Submitted September 10, 1919.    Decided September 16, 1919.

1. IMPROVEMENTS—*Willful Trespasser.*

    One who, with full knowledge of the facts which make his claim of title to land invalid, enters thereon and commits acts of trespass, is a willful trespasser within the meaning of the law, even though he may honestly believe that under such known facts the law confers upon him good title.  (p. 452).

2. MINES AND MINERALS—*Invalid Oil and Gas Lease—Suit for Value of Oil—Deduction of Expenses.*

    One who enters upon a tract of land under an oil and gas lease, with full knowledge of the facts which render the same invalid, and produces the oil therefrom, is not entitled, when sued for the value of the oil so produced and sold from the lands by the party having the superior right, to any deduction from such value because of expenditures made by him in producing and marketing such oil.  (p. 454).

3. DAMAGES—*Interest as Damages—Conversion.*

    Where, in an action for damages, it appears that the complaining party was entitled to receive the fixed money value of property converted at a certain time, in ascertaining his damages at the time of recovery it is proper to add interest on such fixed value from the time of such conversion to the date of recovery.  (p. 458).

Appeal from Circuit Court, Monongalia County.

Separate suits for injunction by the Pittsburgh & West
Virginia Gas Company and others against the Pentress Gas
Company, the Chartiers Oil Company, and others.  Decrees
for plaintiffs, and defendant Chartiers Oil Company appeals.

*Reversed, and causes remanded.*

*Edward S. Craig, Cox & Baker,* for appellant.

*Charles A. Goodwin* and *Glasscock & Glasscock,* for ap-
pellees.

Ritz, Judge:

Plaintiffs are the successors in title to the lessee in two
oil and gas leases executed by the owners of separate tracts
of land lying in Monongalia county.  These leases are in-
definite in their term, and are what is commonly called "no
term leases."  They provide for the drilling of a well with-
in a certain time, or for the payment of a certain sum
of money quarterly in lieu of drilling.  For a number
of years the plaintiffs and their predecessors paid the com-
mutation money in lieu of drilling and kept the leases alive
in that way.  At the end of one of the quarterly periods
for which this commutation money had been paid the land-
owners notified the holders of the leases that the same were
cancelled, and refused to receive the rental monies for the
next quarter.  This contention of the landowners was disput-
ed by the holders of the leases.  Shortly thereafter the own-
ers of the land made other leases to the defendants, or their
predecessors, covering the same tracts of land, and both plain-
tiffs and defendants thereupon made locations upon each
of the tracts of land with a view to drilling for oil or
gas thereon.  In the one instance the landowner, and in the
other the defendant, Pentress Gas Company, filed their bills
in the circuit court of Monongalia county setting up the
facts as aforesaid, and asking that the plaintiffs here be en-
joined from drilling upon said land under the old leases,
contending that the same were cancelled, and also be en-
joined from interfering with the holders of the junior leases
in their operations upon said lands.  This injunction was
granted, and while it was in force the defendants, claiming
under the junior leases, drilled a well on each of the tracts

of land, and produced oil therefrom. Upon a final hearing the circuit court perpetuated the injunctions and cancelled the senior leases. An appeal was prosecuted from those decrees, and this Court reversed the same, holding the senior leases valid and binding, and the junior lessors without right, and dismissed the bills. *Johnson* v. *Armstrong* and *Pentress Gas Co.* v. *Monongahela Natural Gas Co.,* 81 W. Va. 399. Thereafter the plaintiffs brought these suits and invoked the jurisdiction of equity to enjoin the defendants, the holders of the junior leases, from further operations upon said lands, and to have an accounting and recovery of the money received by said defendants for the oil taken from the premises. The cases were submitted upon a statement of agreed facts, from which it appears that the defendants expended in the drilling of each of the wells more than the sum of five thousand dollars, and that they also expended in what is termed caring for, storing and transporting the oil from the wells on the premises, the sum of more than fifteen hundred dollars in each case, which sum so expended by them in drilling the wells and in marketing the oil it is asked may be set off against the amounts received for the oil produced. The court below declined to allow defendants credit for the cost of drilling the wells, but did allow them credit for the other expenses in connection with said oil, and in the one case this was sufficient to entirely offset the amount received for oil, and in the other to reduce such amount to an inconsiderable sum. The plaintiffs contend that the defendants in their operations upon these lands were willful trespassers, and are not entitled to any credit for money expended by them in producing or marketing the oil which they sold from the lands, while on the other hand it is contended by the defendants that they were acting in good faith, believing their rights superior to the rights of plaintiffs, for which reason they are entitled to credit for the expenses incurred in the production of the oil, and further, that even if this is not the case, under decisions of this Court cited by counsel, which will be hereafter referred to, they are entitled to be credited in an accounting with such cost of production.

The first question which naturally presents itself is, what was the status of the defendants in relation to these lands at the time they drilled the wells thereon? That they were trespassers there is no doubt, but as will be hereafter seen a willful trespasser is upon a different footing from one who can be said to be acting in good faith. The defendants contend that they were not willful trespassers because they honestly believed that their title was superior to that of the plaintiffs. They were cognizant of every fact affecting their rights or interests in the lands, as well as the rights and interests of the plaintiffs, and their contention of good faith rests upon the sole ground that they honestly misjudged the law. They believed that under the law the existing facts, of which they were fully informed, gave them the superior right. The plaintiffs did not acquiesce in this view, but on the contrary vigorously contested it and contended from the very beginning that they alone had right to drill for oil and gas on these lands. Can the fact that one acts under a misconception of the law characterize his acts as innocent? The presumption is that every man knows the law, and when he is fully informed as to the facts and makes a wrong application of the law thereto, ordinarily he will be bound by his acts to the same extent as if he had no misconception in regard to the law which controls. He is presumed to be as fully informed as to the law controlling under a given state of facts at one time as at another, and if he acts upon his own interpretation of the law he does so at his peril. In this case, as before observed, the defendants were fully informed as to the facts, and committed the acts which resulted in the extraction of the oil with this full knowledge, and with the further knowledge that their interpretation of the law was vigorously contested by the plaintiffs. It may be said that the defendants had such confidence in their judgment as to be willing to take the risk of an unfavorable decision. Entire good faith, it occurs to us, would have dictated to them that the proper course would be to wait until the controversy had been finally determined before expending large sums of money in drilling upon the land. This doctrine is fully discussed in the case

of *Chesapeake & Ohio Ry. Co.* v. *Deepwater Ry. Co.,* 57
W. Va. 641-695. In that case the Chesapeake & Ohio
Ry. Co., entered upon the lands under an order of the
circuit court and spent large sums of money in constructing
a tunnel. It was afterwards determined that the Deep-
water Railway Co. had the better right to the right-of-way
in dispute, and notwithstanding the tunnel constructed by
the Chesapeake & Ohio Ry. Co. was beneficial to the Deep-
water Ry. Co. in its operations, this Court denied any right
to compensation for the money expended and the improve-
ments made. It was there held that the Chesapeake & Ohio
Ry. Co. could not be a *bona fide* occupant of the land, al-
though it had entered thereon under an order of the court,
believing its title to be good, because it had notice of all of
the facts, being ignorant only of matter of law. The same
doctrine was announced in *Snider* v. *Snider,* 3 W. Va. 200.
And in *Dawson* v. *Grow,* 29 W. Va. 333, it was held that to
entitle an evicted claimant to compensation for improvements
put upon lands, he must have acted *bona fide,* and that
one having knowledge of all the facts in regard to the title
to the land, or means of knowledge, is not such *bona fide*
claimant. In that case it was held that the recordation of
the deed gave notice of the adverse claim, and that the
one making improvements was charged with knowledge of
such deed from the fact of its recordation alone. And in the
case of *Hall* v. *Hall,* 30 W. Va. 779, it was likewise held that
one evicted from land, claiming for improvements placed
thereon, will not be entitled thereto unless he was a *bona
fide* occupant, and that to be such *bona fide* occupant it must
appear that he not only believed he had good title, and
made the improvements in good faith under that belief, but
it must be further shown that he at the time had reasonable
grounds to believe his title good. If the title under which
he claimed appeared upon its face to be defective upon a
proper application of legal principles thereto, he could not
be held to be acting in good faith. This doctrine is announc-
ed in other cases decided by this Court, and is well sustained
both upon reason and authority. Why should one be treated
as acting in good faith when dealing with property as his

own when he knows all of the facts which constitute his claim as well as the claim of his adversary, which facts when properly construed give him no title to the land? Such a holding would make every man a judge of the law in his own case, instead of being bound by the law as interpreted by those charged with that duty. We must, therefore, conclude that the defendants, when they drilled the wells on these lands, were willful trespassers, just as much as though there had been no question but that the plaintiffs had the superior right. They could not decide the disputed question in their own favor, and then proceed with the hope that their acts would be characterized by this Court as in good faith, even though their judgment upon the law of the case should not be approved.

Having reached this conclusion, what then are the plaintiffs entitled to recover in these cases? In case of a trespass to real property by removing timber or mineral therefrom, it seems that the injured party may sue for damages done to the estate, or he may bring his suit in the nature of trover and conversion for the thing severed from the estate, and recover it, or its value. In case he sues for the injury to the estate, the measure of his damages is the depreciation in the value thereof by reason of the trespass, but in case he elects to waive any consequential injury by reason of the trespass and sue only for the material severed, or its value, then the measure of his damages is arrived at in another way. By severing a part of the freehold and converting it into personalty the trespasser does not thereby become vested with title. The title still remains in him to whom the real estate belonged at the time the trespass was committed, and he can follow the article so long as he can find it and recover it for his own benefit without any deduction for the cost of making the severance. *Gaskins* v. *Davis* (N. C.) 25 L. R. A. 813, 44 Am. St. Rep., 439, and note. In this case the plaintiffs do not seek to recover damages for the injury inflicted upon their estate. They seek to recover the value of the oil taken from the property by the defendants as a result of the trespass committed upon their rights. They do not attempt to recover the oil itself, for the very good

reason that it has gone beyond the control of either of the parties. It might seem that if the owner of real estate is entitled to recover the property severed therefrom by a trespasser, without deduction for the cost of such severance where the same increases the value of the property, whether the trespass is willful or otherwise, he would be entitled to recover the value of the article after its severance where the trespasser has put it beyond his control to recover the article itself, and indeed many of the cases so hold. It seems to us, however, that the better rule is that laid down by the Supreme Court of the United States in *Wooden-ware Co.* v. *U. S.,* 106 U. S. 432, and that is that where the trespass is willful the measure of damages is the value of the property at the time and place of demand, without deduction for labor and expense, but where such trespass is not willful, but is the result of a mistake of fact, the measure of plantiff's damages is the value of the article after its severance, less the proper expense of such severance. Sutherland on Damages, §1020; *J. F. Ball & Bro. Lumber Co.* v. *Simms Lumber Co.,* 121 La. 627, 46 So. 674, 18 L. R. A. (N. S.) 244, and note; *Bailey* v. *Railroad Co.,* (S. D.) 19 L. R. A. 653 and note; *Gaskins* v. *Davis* (N. C.) 25 L. R. A. 813, 44 Am. Dec., 439; *Winchester* v. *Craig,* 33 Mich. 205. Many more authorities to the same effect might be cited, but they are thoroughly considered in the cases above noted. In the case of *Guffey* v. *Smith,* 237 U. S. 101, the United States Supreme Court considered a question similar to the one we have here. That was a controversy between junior and senior lessees in which the one not entitled to the property had produced oil therefrom, and that court held that the proper measure of recovery was the value of the oil sold from the land by the trespasser, without any credit for such sums as he had expended in producing the same after he became a willful trespasser, but with credit for such sums as had been expended by him while he was in ignorance of one of the facts making his lease invalid. Counsel for the defendants here attempt to distinguish that case upon the ground that in Illinois one holding an oil and gas lease is held to have an interest in the land, while in this jurisdiction the holder of such a lease

before production thereunder is held not to have an interest in the land as such, but only an exclusive right to drill the land for the purpose of producing these minerals, and to produce the same after they are discovered. This can make no difference in the application of the principle, for the reason that the trespass committed here was to the plaintiffs' rights, regardless of what they were. Admittedly plaintiffs had the exclusive right to drill this land for oil and gas, and the defendants wrongfully took this right from them. Plaintiffs likewise had the right upon discovery of the oil and gas to produce and sell the same, and of this right they were deprived by the defendants, so that it makes no difference as to the extent of the plaintiffs' interests, the result is that they have been deprived of them, and that by the defendants' unwarranted acts. This would lead to the conclusion that the plaintiffs were entitled to decrees at least for the amounts received by the defendants for the oil produced from these premises, without deduction for the amount spent in the production thereof.

But the defendants claim that these cases are controlled by the decisions of this Court in the cases of *Williamson* v. *Jones*, 43 W. Va. 562, *McNeely* v. *South Penn Oil Co.*, 58 W. Va. 438, and *South Penn Oil Co.* v. *Haught*, 71 W. Va. 720, in each of which cases it was held that a joint tenant who had committed waste upon the common property, by producing and selling the oil therefrom, should be given credit in an accounting for the amount expended by him in such production. In all of those cases the party committing the waste did so with knowledge or means of knowledge of the facts affecting his title. In the Williamson and Jones case Jones claimed to be the owner of the whole of the land, and believed himself to be such owner, having bought the same at a judicial sale, but the court held that he was chargeable with the knowledge that an inspection of the record would disclose. To this extent this decision is stronger against the trespasser than that of Guffey against Smith, above cited, for in that case the Supreme Court held that even though the senior lease was recorded, the junior lessee would not be charged with notice of it from that fact alone. Believing

himself to be the owner of the whole tract of land, he developed the same for oil and gas, and thereafter the owners of the other seven-tenths sued him for an accounting. Judge BRANNON in that case says that by dry law Jones would not be entitled to any credit for the money expended by him in doing the drilling, but because of the equities existing he was allowed such credit. How did these equities arise? In the case of joint tenants each is to an extent the agent of the other in the matter of caring for the joint property, and a joint tenant who commits waste because of this relationship is to some extent at least in the same situation as an agent who acts in excess of his authority. If one of the joint owners is in possession of the real estate, he has the right to use it, but not to commit waste thereon, subject to an accounting with his cotenant for the rents and profits derivable from such estate. If he exceeds his authority and commits waste there is an equitable relation between him and his cotenant similar to that existing between a principal and an agent who exceeds his authoity. It is well settled that if an agent exceeds his authority in making a contract for his principal, and the principal subsequently accepts the benefits of the contract, he must likewise submit to its obligations. There is a similar relation, perhaps not however so well defined, or existing in the same degree, between joint tenants where one exceeds his authority by committing waste upon the joint estate, and this is the relation because of which the equities spoken of by Judge BRANNON arose. The same may be said of the decision in the other two cases referred to. The matters decided involved waste committed by joint tenants. In the McNeely case Judge POFFENBARGER, speaking for this Court, says that the Court seems to have gone to the utmost limit of equity jurisdiction to relieve from the rigors of the common and statutory law in allowing the expense incurred by the drilling in that case, and we quite agree with this conclusion. We are not willing to extend those limits so as to include a trespass committed by one who is a stranger to the title. In the Haught case above referred to it is intimated in the opinion that the decision would have been different were it not for the fact that the notice given by the joint

tenant out of possession to his cotenant was more of an invitation to go on with the drilling than it was a prohibition thereof. It cannot be doubted that there is a relation between joint tenants from which equities may arise in favor of the one or the other which does not exist between strangers, and for this reason equity may relieve against the harshness of the rule of law otherwise applicable.

The plaintiffs claim that they are entitled, not only to the oil received by the defendants and sold by them, but also to the one-eighth thereof delivered to the owners of the land. They argue that while it is true the landowners are entitled to receive one-eighth of the oil produced, yet this delivery of the one-eighth to the landowners by the defendants did not fulfill their contract with the landowners. This may be quite true, but it must be borne in mind that the plaintiffs are only under obligation to deliver to the landowners one-eighth of the oil produced by them. They are under no obligation to deliver one-eighth of the oil produced by a trespasser, especially when such trespasser is put upon the land by the landowners themselves. We do not think, therefore, that the plaintiffs' contention in this regard has merit.

Plaintiffs also contend that they are entitled to receive, not only the price at which the oil was sold, but to have interest thereon as a part of the damages, from the time the defendants received the money until it is paid to them, and they further contend that they are entitled to receive the highest market price of the oil between the time that it was produced and the institution of these suits. Both of these contentions cannot stand. Their bills in these cases pray that they be decreed the amount received by the defendants for the oil produced and sold from the premises. This is inconsistent with the demand for the highest market price of such oil between the date of its production and the bringing of the suits. Plaintiffs were, however, entitled to have this money at the time the oil was converted into money. The oil was theirs and they elected by their suits to take what defendants actually received for it, but contend that as part of their damages interest should be added to this amount until the same

is paid.   In this contention we think they are correct.   While ordinarily interest is not recoverable as a part of unliquidated damages, still in ascertaining the amount of damages to which one is entitled, where it appears that such damages are determined by a fixed sum to which the plaintiff was entitled at a particular time, interest may be added to it as one of the elements constituting the amount to which the plaintiff is entitled at the time of the recovery.   8 R. C. L. 537. This was our holding in *Cresap* v. *Brown,* 82 W. Va. 467, 96 S. E. 66.

In these cases we are of opinion that the plaintiffs are entitled to decrees in their favor for the amounts actually received by the defendants for the oil sold by them from the premises, with interest on each of these amounts from the time the same was so received until the entry of such decrees, without any deduction therefrom for money expended by the defendants for producing and marketing such oil. The decrees appealed from will be reversed and the cases remanded for the entry of such decrees.

*Reversed and cause remanded.*