STATE OF WEST VIRGINIA

*v.*

CLAUDE O. TRAVIS

(No. 10602)

Submitted January 13, 1954. Decided March 2, 1954.

*John G. Fox*, Attorney General, *Virginia Mae Brown*, Assistant Attorney General, for defendant in error.

LOVINS, JUDGE:

Claude O. Travis, hereinafter designated as defendant, was convicted of a violation of the first paragraph of Code, 61-3-30. He was sentenced to pay a fine of $25.00. From the judgment so sentencing him, he prosecutes this writ of error.

The factual background of this prosecution involves the ownership of a gas well and the right of access thereto. The defendant admits entry on the land in question, but asserted that he did so under a bona fide claim of right to make such entry.

W. K. Shinn and Mary C. Shinn, his wife, by an agreement bearing date the 5th day of January, 1909, leased a tract of land containing 124 acres to the Hope Natural Gas Company, a corporation. It was provided in such agreement that the same should remain in force for a term of five years from April 28, 1909, and so long thereafter as oil or gas, or either of them, was produced from said land by the lessor, its successor and assigns. It was further provided that if the lessee failed to complete a well on the land on or before the 28th day of April, 1909, that the lessee should pay $31.00 quarterly, in advance, for each additional three months. The well was completed on or about April 28, 1909. The lease agreement mentions a former lease dated January 4, 1904, but that lease is not in the record. The lease agreement made in 1909 authorizes the use of free gas to heat and light two dwelling houses. The lease provided that the lessee should have the right to use water and gas necessary for drilling and operating the lease; that at any time the lessee had a right to remove all machinery and fixtures placed on the premises; that the lease could be surrendered for cancella-

tion upon the payment of $1.24 at any time; and that when the surrender was consummated, all liabilities accruing under the terms of the lease agreement should cease and the lease should become null and void.

The record is fairly clear, by inference at least, that a well was drilled on the 124 acre tract, but whether it produced any oil or gas, it is not clearly shown.

By a writing bearing date July 3, 1945, the Hope Natural Gas Company notified Leo C. Shinn, an assignee of the royalty and rights formerly held by the lessors, that the well drilled on the 124 acre tract of land described in the above mentioned lease, had been disconnected from the lessor's lines on June 29, 1945, in preparation for "plugging" and abandoning such well, and that no further royalty would be paid on the well. On the same date, a letter was written to Leo C. Shinn, reiterating that the well had been disconnected and would be abandoned; that the abandonment of the well constituted an abandonment of the lease; that yearly cash payments in lieu of the use of free gas would be discontinued as of June 9, 1946.

The Hope Natural Gas Company, instead of executing a formal surrender, executed an agreement bearing date the 23rd day of July, 1945, by which that Company "granted, bargained, sold, assigned and conveyed and by these presents does grant, bargain, sell; assign and convey unto the said J. J. Graham and W. D. Gribble, * * * all its right, title and interest in and to the following described oil and gas leases, estates, wells and property, and agreements relating thereto, subject to the exceptions and reservations hereinafter set forth and also subject to the terms, conditions and provisions contained therein and as hereinafter provided, as follows:"

A conveyance of the land was made to Eugene Chipps and Mary Ellen Chipps, by deed bearing date the 20th day of November, 1946, executed by Ada Shinn, the widow of Austin B. Shinn, who acquired the land by deed from a special commissioner, and her daughter, a single woman. Three tracts of land were conveyed by such deed. The

first tract contained 34 acres, more or less, the second tract containing 6-2 acres and the third tract containing 79.8 acres, which seems to be the tracts of land covered by the lease to the Hope Natural Gas Company. The well herein mentioned was located on the 79.8 acre tract. The conveyance of such land was made subject to the life estate of Mary C. Shinn, covering the 34 acres. The deed to Chipps and wife likewise conveyed one-half of all oil and gas in and under the 34 acre tract, subject to the life estate mentioned, and conveyed all the gas in and under tracts numbered 2 and 3, being 6-2 acres and 79.8 acres. The conveyance aforesaid was made "subject to all existing leases for oil and gas purposes given by predecessors in title as well as all rights-of-way for pipe lines for the transportation of oil and/or gas, telephone and telegraph lines, and any other grants that may have been given predecessors in title and reference is here had to the public records of Doddridge County for such grants, easements and privileges, the same as if recited herein in full."

Leo C. Shinn and wife executed an assignment of royalty interest arising under the oil and gas lease of Hope Natural Gas Company to W. D. Gribble. The agreement of assignment recites that W. D. Gribble had purchased the lease made to the Hope Natural Gas Company.

J. J. Graham sold his interest in the W. K. Shinn well, located on the 124 acre tract to G. W. Hill and Ed Tate, and delivered to the purchasers a writing in the form of a receipt, reciting the sale of one-fourth interest in the well to Hill on or about the 2nd day of August, 1945, and to Tate, on or about the 19th of August, 1948. Messrs. Hill and Tate sold their interest in the well to W. D. Gribble.

Gribble died, and on the 17th day of June, 1952, by writing of that date, his administrator, P. Douglas Farr sold and assigned to C. O. Travis, the defendant, "* * * all the following described oil and gas wells, leases and wells thereon and all material and equipment therein and thereon owned by the said administrator." The writing con-

tained a description of the leasehold estate on the 124 acres.

At the inception of this prosecution, the royalty and other rights which had been separated from the land, as well as the machinery and equipment in the well on the W. K. Shinn tract, had been sold and assigned to the defendant. The prosecuting witness, Chipps, owned the land and one-half of the oil and gas under the 34 acre tract, by his deed of conveyance. Just exactly what gas or oil interests the defendant owned is not clear.

No royalty, delay rentals or money in lieu of using free gas had been paid from the 9th day of June, 1946, until the commencement of this criminal prosecution.

The latter part of August, 1952, the defendant called at the home of Chipps and informed him that he had bought the Shinn well and another well, and that he intended to "pull them". Chipps advised him that he had nothing to do with one of the wells, but objected to the defendant "pulling the Shinn well". He also told the defendant that there was some question in connection with that well. On that occasion, the defendant did not enter upon the land of Chipps, but, about the 20th day of September, 1952, the defendant came to the home of Chipps with some machinery. Chipps advised the defendant that he was trespassing if he entered upon the land. Notwithstanding this information, Travis entered on the land with the machinery and regraded an old road, cut some shrubbery, briars and some small trees. In the meanwhile, Chipps had a written notice prepared forbidding the entry upon his land, requiring the defendant to cease his operation thereon and to remove his equipment from Chipps' land. The defendant however, continued to work on the road and finally reached the site of the well. Exactly what action Chipps took to stop the defendant is not shown. He says he took "other proceedings" and the defendant and his crew of men stopped their operations upon the property.

The Grand Jury of Doddridge County, on the 5th day of November, 1952, returned an indictment charging the

defendant with violation of Code, 61-3-30. A tract of land containing 79.8 acres was described in the indictment which was one of the three tracts of land covered by the lease to Hope Natural Gas Company. The defendant pleaded not guilty and defended his conduct on the ground that he believed that he had a right to enter the land in good faith for the purpose of removing the casing and other personal property which he had purchased.

At the close of the evidence, the court gave three instructions, tendered by the defendant, and refused one of the defendant's instructions. No question is raised relative to the instruction tendered by the defendant and refused.

The court gave twelve instructions, tendered by the state. One of those instructions not given, was withdrawn and another instruction tendered by the state was refused.

Instructions numbered 11 and 13, tendered by the state and given are made the basis of assignment of error. Those instructions read as follows: "State's Instruction No. 11. The Court instructs the jury that the lease dated January 5, 1909, between W. V. Shinn et ux and the Hope Natural Gas Company and admitted in evidence in this case expired as a matter of law upon the ceasing of production of oil or gas from said premises and that the owners of said leasehold estate would then have a reasonable time only to remove any equipment remaining on said premises." "State's Instruction No. 13. The Court instructs the jury that one who, with full knowledge of the facts which make his claim of title to land invalid, enters thereon and commits acts of trespass, he is a willful trespasser within the meaning of the law even though he may honestly believe that under such known facts the law confers upon him good title."

"Therefor the Court instructs you that if you believe, beyond a reasonable doubt that Claude O. Travis injured, defaced or destroyed the land described in the indictment, at the time laid therein, and at the time he committed said acts as so charged, he knew or should have known of the

facts which made his claim to the right to so injure, deface or destroy said land invalid, and you further believe by a preponderance of the evidence that the said acts were done by the defendant under the belief that he had a bona fide claim of right you should find the defendant guilty as charged in the indictment."

Though several assignments of error are made, only two questions are fairly raised on this record: (1) Was there sufficient evidence to support the verdict of guilty returned by the jury? (2) Was it error to give instructions numbered 11 and 13, tendered by the state?

The pertinent part of the statute under which the defendant was charged and convicted reads as follows: "If any person unlawfully, but not feloniously, take and carry away, or destroy, injure or deface any property, real or personal, not his own, he shall be guilty of a misdemeanor, and, upon conviction, be fined not exceeding one hundred dollars, and may, in the discretion of the court, be confined in jail not exceeding sixty days." Code, 61-3-30. A statute substantially similar will be found in Code, 1849, and Code, 1860. The above quoted statute appears in our own Code of 1868 in somewhat different phraseology from the present statute.

As far as we have been able to ascertain, a charge of criminal trespass under the pertinent statute has been before this Court on one occasion. It is held in the case of *State* v. *Andrews,* 75 W. Va. 233, 83 S. E. 1010, that a person cannot be convicted of trespass under the statute if the act of the defendant was done under a bona fide claim of right. The question of whether it was done under such claim of right is ordinarily one for the jury. *State* v. *Andrews, supra.* No offense is committed within the purview of the statute if the injury does not impair the utility or diminish the value of such property. *Davis* v. *Chesapeake & Ohio Ry. Co.,* 61 W. Va. 246, 56 S. E. 400.

The Supreme Court of Appeals of Virginia, in the case of *Campbell and Others* v. *The Commonwealth,* 2 Robinson, page 792, Virginia Reports, Annotated, 805, held that

no trespass was committed for which a prosecution could be sustained, under a statute as it then existed, of a person who forcibly pulled down and removed a fence, such person having a better title to the disputed fence. See *The Commonwealth* v. *Percavil,* decided June, 1834, 4 Leigh 686, Virginia Reports, Annotated, 1078. In the case of *Ratcliffe* v. *The Commonwealth,* 5 Gratt. 658, decided in 1848, Virginia Reports, Annotated, 553, the court held that a person who removed a fence under a claim of right, believing it to be his own, had a bona fide right to it, and that such person committed no offense under the statute. In the case of *Henderson* v. *The Commonwealth,* 8 Gratt. 708, decided in 1852, Virginia Reports, Annotated, 751, the court, though affirming the conviction of the defendant, indicated that an aggravated trespass such as was shown in that case, would sustain conviction. In the *Henderson* case, the facts as stated in the opinion disclose that the defendant forcibly entered on the porch of a neighbor and shot two dogs.

It will thus be seen that the element of good faith stems from cases decided prior to June 20, 1863, and constitute authority for this Court's decision in the *Andrews* case. We are citing numerous cases decided in other jurisdictions which are to the same effect. See *State* v. *Baker,* (N. C.) 56 S. E. 2d 424; *State* v. *Yellowday,* (N. C.) 67 S. E. 480; *Murphey* v. *State,* (Ga.) 41 S. E. 685; *Hayes* v. *State,* (Ga. App.) 79 S. E. 761; *Myers* v. *State,* (Ind.) 130 N. E. 116; *People* v. *Stevens,* (N. Y.) 16 N. E. 53. It is thus seen that there is ample authority for inquiry into the element of good or bad faith in prosecutions under the statute here considered.

The next question which arises is: Who is required to show that good faith and what is he required to show? An answer to the first part of that question will be found in the case of *State* v. *Glenn,* (N. C.) 23 S. E. 1004. It is there held that it is incumbent upon a defendant charged with willful trespass to show that he entered under a license or a bona fide claim of right. To the same effect is *State* v. *Durham,* (N. C.) 28 S. E. 22. In addition to

showing the bona fide claim of right, the defendant must show facts and circumstances affording a reasonable ground for such belief. A mere statement that he believed he had a right to enter is not sufficient.

The defendant in the instant case showed that he at least believed that he was the owner of the casing and personal property located in the W. K. Shinn well. Whether he acted with utmost prudence and care, we are not here concerned. If such claim was reasonable and based on circumstances and facts which would lead a reasonable person to think he had a right to go on the land and procure his property, he was not guilty of any offense.

We do not think that a criminal prosecution is a proper proceeding to determine the ownership of such personal property, if there was an existing controversy with respect to the ownership of the personal property in the well, as well as the question of whether any person was indebted to the land owner, Chipps, for occupancy of the premises. We express no opinion on those questions. In order to emphasize, it is proper to say that the question of civil liability of the defendant or any of his predecessors in title is not presented in this case. Rules, with regard to civil trespass, cannot be invoked in this case. It may be remarked however, that in civil controversies, a trespass to land committed, not. recklessly, and in disregard of other people's rights, but through inadvertence or mistake "under an honest belief that the trespasser was acting within his legal rights, is an innocent trespass." *Mining Co. v. Gerstell,* 100 W. Va. 472, 131 S. E. 152. In that case, the cases of *Gas Co. et al. v. Gas Co. et al.,* 84 W. Va. 449, 100 S. E. 296, and *Petrelli v. Coal Co.,* 86 W. Va. 607, 104 S. E. 103, are cited for the proposition that greater damages may be assessed for willful trespass than for an innocent trespass. See *Coal Co. v. Coal Co.,* 97 W. Va. 368, 125 S. E. 226; *Wood v. Weaver,* (Va.) 92 S. E. 1001. But, if a trespass amounts to a breach of peace, or threatens a breach of peace, it is a crime at common law. *Miller v. Harless,* (Va.) 149 S. E. 619. It is to be noted that the

statute here considered does not denounce willful or malicious trespass. See 2 Cyclopedia Criminal Law, Brill, Sections 963, 964.

As indicated above, we do not go into the question of whether the leasehold had been abandoned or otherwise, and what we have said herein does not in any way indicate that the personal property on the Shinn land was owned by either the defendant or the land owner. We simply say that the defendant was not guilty of a criminal trespass under the provisions of the statute, and that the circumstances shown by the evidence of the state were explained by the evidence adduced by the defendant. And, there being no dispute of evidence adduced by the defendant, we think that the verdict of the jury is not supported by the evidence. The evidence adduced by the defendant fully exculpates him from criminal intent or wrong.

The giving of instruction number 11 was erroneous in that it covered the civil rights of the defendant and the land owner. Instruction number 13 was misleading, and in effect, deprived the defendant of his defense of good faith, which, as shown hereinabove, is a material element involved in a prosecution of this kind.

For the reasons hereinabove stated, we reverse the judgment of the Circuit Court of Doddridge County, set aside the verdict and award the defendant a new trial.

> *Judgment reversed; verdict*
> *set aside; new trial awarded*
> *defendant.*

BROWNING, JUDGE, dissenting:

I respectfully dissent from the decision of the Court in this case, and would affirm the judgment of the Circuit Court of Doddridge County.

The only other case involving criminal trespass that has been decided by this Court is *State* v. *Andrews,* 75 W. Va. 233, 85 S. E. 1010, briefly discussed in the Court's opinion.

The rule laid down therein is one upon which I would affirm the conviction: "One can not be convicted for a trespass where the act complained of was done under a *bona fide* claim of right; but the question whether the act was so done is ordinarily one for the jury." An examination of the facts in the *Andrews* case shows that the conviction was affirmed by this Court, although the defendant maintained that he had a contractual right to go upon the property and remove a building. The jury decided that he had no such right, although he maintained that he did, which I believe to be the exact factual situation in the present case. The defendant here claimed the privilege of going upon the prosecuting witness's land, as the result of securing an assignment of a leasehold estate, which the record clearly shows had been abandoned several years previously. The defendant could secure by assignment no better right than his assignor possessed. This defendant was informed by the owner of the land upon which he trespassed that he had no right to go upon it; the defendant thereafter removed a "no trespass" sign, and invaded the premises. He continued to destroy the real property of the prosecuting witness after a so-called "stoppage notice" had been served upon him, and did not desist until after he had been arrested upon the warrant charging criminal trespass. Certainly upon those facts, it became a question for the jury to determine whether the act complained of was done under a bona fide claim of right. The jury is not bound to accept the explanation offered by the defendant, and neither should this Court.

It is my opinion that the rule established by the North Carolina cases, two of which are cited in the Court's opinion, are consistent with instructions given by the court in this case. In *State* v. *Durham*, 121 N. C. 546, 28 S. E. 22, the second syllabus point is as follows: "Testimony that defendant believed that he had a right to enter must be supplemented by facts showing a reasonable ground for such belief."

Code, 61-3-30, under which this defendant was tried, provides that if any person unlawfully destroys or de-

faces any property, real or personal, "not his own", he shall be guilty of a misdemeanor, and under the provisions of that section, it is necessary for evidence to be introduced, and for instructions to be given, upon the question of the ownership of the land alleged to have been invaded. Title to the realty is not thereby determined, but such procedure is necessary to ascertain whether the defendant trespassed upon land "not his own". Therefore, I think it was not reversible error for the court to give Instructions Nos. 11 and 13, and believe that they correctly state the law applicable to this offense.

JUDGE HAYMOND joins with me in this dissent.